**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC; | : | |
| CT FREEDOM ALLIANCE, LLC; | : | |
| CONSTANTINA LORA; MIRIAM | : | DKT No.: |
| HIDALGO; ASMA ELIDRISSI; | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT OFFICE OF EARLY | : | |
| CHILDHOOD DEVELOPMENT; | : | |
| CONNECTICUT STATE | : | |
| DEPARTMENT OF EDUCATION; | : | |
| CONNECTICUT DEPARTMENT | : | |
| OF PUBLIC HEALTH; BETHEL BOARD | : | |
| OF EDUCATION; GLASTONBURY | : | |
| BOARD OF EDUCATION; | : | |
| STAMFORD BOARD OF EDUCATION; | : | |
| | : | |
| Defendants. | : | APRIL 30, 2021 |

## COMPLAINT

*"The constitutional freedom of religion is the most inalienable and sacred of all human rights."* – Thomas Jefferson

1.     This is an action that seeks to forestall the harm caused to countless parents and their children by an unconstitutional law recently enacted in Connecticut requiring parents to choose between educating their children or their religious beliefs. It states claims for declaratory and injunctive relief under the First, Fourth, Fifth, and Fourteenth Amendments.

## PARTIES

2.     The Plaintiff, We The Patriots USA, Inc., is a nonprofit public charity organized and operated exclusively for tax-exempt purposes in accordance with Section

501(c)(3) of the Internal Revenue Code.  More specifically, it is dedicated to promoting constitutional rights and other freedoms through education, outreach, and public interest litigation, thereby advancing religious freedom, medical freedom, parental rights, and educational freedom for all. As a Section 501(c)(3) public charity, it has members who participate in its tax-exempt activities as volunteers and committed community stakeholders bringing and supporting litigation in federal and state courts on a variety of constitutional and other freedom-related matters directly affecting their rights and interests. A significant number of its members are Connecticut parents affected by the matters complained of herein.

3.      The Plaintiff, CT Freedom Alliance, LLC, is a public interest organization dedicated to advocating for religious freedom, medical freedom, parental rights, and educational freedom among others. It has engaged in lobbying in opposition to the law at issue in this suit on behalf of its members, and it brings and supports litigation in various courts on a variety of matters. Most of its members are parents affected by the legislation complained of herein.

4.      The Plaintiff, Constantina Lora, is an adult resident of the state of Connecticut. She sues on behalf of one of her minor children who is a Bethel pre-schooler.

5.      The Plaintiff, Miriam Hidalgo, is an adult resident of the state of Connecticut. She sues on behalf of her two minor children who are eligible for daycare and one of whom will be eligible for preschool in the fall of 2021 in Glastonbury, Connecticut.

6.      The Plaintiff, Asma Elidrissi, is an adult resident of the state of Connecticut. She sues on behalf of her two minor children who are eligible for daycare and preschool

and one of whom will be registered for kindergarten in the fall of 2021 in Stamford, Connecticut.

7.      The Defendant, Connecticut Office of Early Childhood Development (OEC), is a branch of Connecticut's state government and is the primary regulatory authority for early childhood development programs including preschool and daycare.

8.      The Defendant, Connecticut Department of Public Health, is a branch of Connecticut's state government and is charged with primary enforcement of public health laws in Connecticut.

9.      The Defendant, Connecticut State Department of Education, is a branch of Connecticut's state government and is the primary regulatory authority for public education in Connecticut.

10.     Defendant Bethel Board of Education is the governing body and local education agency for the Bethel Public Schools and all educational institutions in Bethel, Connecticut.

11.     Defendant Glastonbury Board of Education is the governing body and local education agency for the Glastonbury Public Schools and all educational institutions in Glastonbury, Connecticut.

12.     Defendant Stamford Board of Education is the governing body and local education agency for the Stamford Public Schools and all educational institutions in Stamford, Connecticut.

## JURISDICTION

13.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 2201 as well as 42 U.S.C. §§ 1983 and 1988. Venue is appropriate under 28 U.S.C.

3

§ 1391 because all parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## FACTUAL ALLEGATIONS

### *Context*

14.     Article Eighth, § 1 of the Connecticut Constitution guarantees free public education to all Connecticut citizens.

15.     During the waning hours of April 27, 2021, the Connecticut General Assembly passed a heavily amended bill labelled HB-6423 – "An Act Concerning Immunizations" – and immediately sent the act to Governor Ned Lamont to sign into law. Governor Lamont signed the act into law on April 28, 2021. It takes effect immediately.

16.     The original HB-6423, *see* **Exhibit A**, was replaced entirely by House Amendment Schedule A. *See* **Exhibit B**. House Amendment Schedule G added a final section to the bill. *See* **Exhibit C**. The full Connecticut legislature voted to pass the bill as modified by Schedule A and Schedule G. They constitute the entirety of the law.

17.     The act requires parents of children enrolled in preschool programs or any other prekindergarten program – public or private – to vaccinate their children on or before September 1, 2022 or not later than fourteen days after transferring to another program and to submit proof of that vaccination to their school even if vaccinating their children is contrary to their religious beliefs. **Exhibit B, p. 4, Section 1(c).** The act does not require parents of children already enrolled in kindergarten through grade 12 to vaccinate their children if vaccinating their children is contrary to their religious beliefs.

18.     The act also provides for a medical exemption to the vaccination requirement upon the provision of a medical professional's note. **Exhibit B, p. 2, Section 1(a)**

19.     Finally, the latest vaccination data from the Connecticut Department of Public Health shows that kindergarten students have an average vaccination rate of 96.2% for their measles, mumps, and rubella (MMR) vaccines. *See* **Exhibit D – School Immunization Survey Data, pp. 2-3.**[1]

### *A Product Derived From Aborted Fetuses With Potential For Devastating Consequences*

20.     A vaccine consists of a virus (or a component of a virus), a liquid buffer, contaminants from the cell line used to manufacture it, commercial stabilizer, and other additives.

21.     It is physically impossible to remove all cell line contaminants from a vaccine dosage.

22.     Pharmaceutical companies use cell lines descended from aborted fetuses to research, develop, test, and produce their vaccines.

23.     As of February 2020, the United States Center for Disease Control and Prevention (CDC) lists ten manufactured vaccines that contain human fetal cells (designated by the acronyms MRC-5 and WI-38). **Exhibit E – Vaccine Excipient Summary**.[2]

---

[1] https://portal.ct.gov/DPH/Immunizations/School-Survey
[2] https://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/b/excipient-table-2.pdf

24.     The presence of very small amounts of human fetal cells and DNA in the human blood can create a very strong autoimmune reaction in a person by which his body turns against itself and starts killing its own cells and tissues.

### *Plaintiff Constantina Lora*

25.     Constantina Lora is a Connecticut resident with one child who attends pre-school in Bethel, Connecticut. Their child will be subject to HB-6423's vaccination mandate.

26.     Lora and her husband are devout Greek Orthodox believers who decline vaccination on two religious grounds.

27.     First, they personally believe that to use or benefit from the use of aborted fetal cells is morally wrong and would constitute participation in what they feel was an act of intentional, premeditated murder of another human being. They also personally believe that injecting themselves with cells from other animals and chemicals – which are present in all vaccines – is morally wrong.

28.     Second, they personally hold a general religious belief that harming a child is morally wrong, and they believe that vaccinating their children would harm them, thus rendering it wrong.

29.     This is not the Lora and her husband's first encounter with intolerance for their religious beliefs regarding vaccinations. They used to live in New York and, approximately two months ago, they moved to Connecticut permanently because New York repealed its religious exemption to the school vaccination requirements. Lora's husband now commutes three hours to work every day because New York failed to respect the family's religious beliefs, and they have refused to abandon their beliefs.

6

30.     Lora and her husband have one child who is enrolled in pre-school with a current religious exemption. They have two older children in middle school and high school who will be allowed to keep their religious exemptions. Their youngest child will enroll in kindergarten in the fall of 2022 and will not be allowed to keep their religious exemption.

### *Plaintiff Miriam Hidalgo*

31.     Plaintiff Miriam Hidalgo and her husband have two small children who are eligible for daycare and will be eligible for preschool in the fall of 2021 in Glastonbury, Connecticut. Their children will be subject to the vaccination requirement and will not be allowed to claim a religious exemption.

32.     Miriam and her husband are devout Catholics who decline vaccinations on two grounds.

33.     First, they personally believe that to use or benefit from the use of aborted fetal cells is morally wrong and would constitute participation in what they feel was an act of intentional, premeditated murder of another human being.

34.     Second, they also have reached an agreement to raise their children as vegans – a decision grounded in Miriam's personal religious beliefs. Thus, they believe that injecting their children with cells from other animals is morally wrong.

35.     Miriam and her husband operate three small businesses. While Miriam has dedicated herself to being a stay-at-home mother, she still needs to attend to responsibilities pertaining to those businesses. Homeschooling her children would place an overwhelming burden upon her.

*Plaintiff Asma Elidrissi*

36.     Plaintiff Asma Elidrissi and her husband are immigrants to the United States and have two small children – one who has not fully completed registration for kindergarten and one will be eligible for preschool in the fall of 2021. Their children will be subject to the vaccination requirement and will not be allowed to claim a religious exemption.

37.     Asma and her husband are devout Muslims who decline vaccinations on three religious grounds:

38.     First, they personally believe that to use or benefit from the use of aborted fetal cells is morally wrong and would constitute participation in what they feel was an act of intentional, premeditated murder of another human being.

39.     Second, they abstain from pork on religious grounds. Porcine gelatine – a derivative of pork – is used as a stabilizer in certain vaccines, including ones that the Defendants will require. To inject themselves with these vaccines would violate the well-established Muslim prohibition on consuming pork.

40.     Third, before Asma fully informed herself of vaccine ingredients, she followed a doctor's assurance that vaccines posed no harm to her children and that they did not contain products barred by her religion. Thus, her son received the measles, mumps, and rubella (MMR) vaccination. That vaccination caused him to suffer serious symptoms and ultimately a speech and learning disorder for which he now receives special services. Asma and her husband hold a sincere religious belief that harming children is morally wrong. Vaccines have harmed their children, and they object to harming their children as being morally wrong.

8

41.     Finally, Asma and her husband are not wealthy, and Asma needs to return to work to supplement their income so they can afford to provide their children with a full upbringing in accordance with the American dream that they have come to the United States to pursue. If their children cannot attend any school or day care – public or private, Asma will be unable to return to work. They also own a small business and have put down deep roots in Connecticut. Moving to another state to freely exercise their religion is not a viable option for them.

**Count One – Violation of First Amendment Right To Free Exercise Of Religion**

42.     Paragraphs 1 through 41 are incorporated herein.

43.     The First Amendment provides, in relevant part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." This Free Exercise Clause "protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based their religious status…. Applying that basic principle, this Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct 2012, 2019 (2017) (internal citation and quotation marks omitted).

44.     Connecticut's Constitution guarantees all Connecticut children a right to a free and adequate public education.

45.     HB-6423 prohibits any child whose parents decline to vaccinate them on religious grounds from attending pre-school or kindergarten through grade 12 in both public and private schools, daycares, and pre-schools, except for the children who are

already enrolled in kindergarten through grade 12 and have already claimed a religious exemption.

46.    HB-6423, however, does allow parents to decline to vaccinate their children if a medical professional grants their children a medical exemption from vaccination.

47.    HB-6423 denies a generally available benefit – education – to children if their parents do not waive their religious identity while affording the same benefit to parents and children who assert a medical exemption.

48.    Thus, HB-6423 violates the First Amendment on its face.

49.    HB-6423 also prevents parents from seeking alternative education options for their children by applying the same mandate to private schools, daycares, and pre-schools.

50.    In other words, HB-6423 forces parents to either renounce their religious beliefs and vaccinate their children or homeschool their children – something that many parents cannot do – thus depriving them of any education opportunities.

51.    Thus, HB-6423 seeks to compel an activity that goes against the Plaintiffs' religious beliefs by depriving their children of a fundamental state constitutional right. Therefore, it violates the First Amendment.

### Count Two – Violation of First, Fourth, Fifth, And Fourteenth Amendment Rights To Privacy And Medical Freedom

52.    Paragraphs 1 through 51 of this Complaint are incorporated herein.

53.    In *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), the United States Supreme Court established a woman's right to terminate her pregnancy under the First, Fourth, Fifth, and Fourteenth Amendments. The

principles derived from these cases establish a broad right to freedom to make personal choices – central to personal dignity and autonomy – about one's own medical decisions.

54.     HB-6423 deprives the Plaintiffs of their rights to privacy and medical freedom by conditioning the state constitutional right to a free and adequate education on adhering to the state's mandates for medical decisions.

55.     HB-6423 deprives the Plaintiffs of their rights to privacy and medical freedom by leaving the Plaintiffs no viable alternatives to educate their children without submitting to the Defendants' interference with her medical decisions. The Plaintiffs do not have the capabilities to adequately homeschool their children. They cannot send their children to private schools, daycares, or pre-schools because HB-6423 places the same mandates on private institutions as it does on public ones.

56.     Thus, HB-6423 violates the First, Fourth, Fifth, and Fourteenth Amendments on its face.

**Count Three – Violation of The Equal Protection Clause Of The Fourteenth Amendment**

57.     Paragraphs 1 through 56 of this Complaint are incorporated herein.

58.     HB-6423 prohibits any child whose parents decline to vaccinate them on religious grounds from attending pre-school or kindergarten through grade 12 in both public and private schools, daycares, and pre-schools, except for the children who are already enrolled in kindergarten through grade 12 and have already claimed a religious exemption.

59.     HB-6423, however, does allow parents to decline to vaccinate their children if a medical professional grants their children a medical exemption from vaccination.

60.     HB-6423 denies a generally available benefit – education – to children if their parents do not waive their religious identity while affording the same benefit to parents and children who assert a medical exemption.

61.     Thus, HB-6423 singles out religious beliefs for less favorable treatment under the law and creates age-based classes on who may continue to exercise their religious beliefs while still availing themselves of an education.

**Count Four – Violation of The Fourteenth Amendment Right To Child Rearing**

62.     Paragraphs 1 through 61 of this Complaint are incorporated herein.

63.     "[T]he interest of parents in the care, custody, and control of their children … is perhaps the oldest of the fundamental liberty interests recognized by the [Supreme Court]." *Troxel v. Granville*, 530 U.S. 57 (2000).

64.     HB-6423's imposition of a vaccination requirement that prohibits the Plaintiffs from educating their children in any forum – public or private – completely interferes with their right to decide what is best for their children's health and to raise them according to their religious beliefs.

65.     Thus, HB-6423 violates the Fourteenth Amendment on its face.

**Count Five – Unlawful Discrimination In Violation of The Individuals with Disabilities Education Act As To Defendants Connecticut Office Of Early Childhood Development, Connecticut State Department of Education, Connecticut Department of Health, Stamford Board of Education.**

66.     Paragraphs 1 through 65 of this Complaint are incorporated herein.

67.     The Individuals With Disabilities Education Act (IDEA) requires states that receive federal money to provide a free appropriate public education to all children with disabilities between the ages of 3 to 5.

68.     Connecticut receives federal financial assistance under the IDEA.

69.     The IDEA requires qualifying states to provide children with special needs that have been deemed by the school district to qualify for special education with an education in the least restrictive environment possible.

70.     While HB-6423 eliminates the religious exemption, it makes no provision for providing disabled children whose parents assert a religious objection to taking a vaccine a free appropriate public education in the least restrictive environment possible.

71.     Plaintiff Asma Elidrissi's oldest child is disabled within the meaning of the IDEA.

72.     Plaintiff Asma Elidrissi will choose not to comply with HB-6423's requirement that her oldest child be vaccinated because of her sincerely held religious beliefs.

73.     The IDEA still requires the Defendants to provide her oldest child with a free appropriate public education in the least restrictive environment possible.

74.     HB-6423 and the Defendants make no provision to do so.

75.     Thus, HB-6423 violates the IDEA insofar as it denies a free appropriate public education in the least restrictive environment possible to Plaintiff Elidrissi's children.

## Declaratory and Injunctive Relief

WHEREFORE, the Plaintiffs seeks declaratory injunctive relief as follows:

A.  A declaratory judgment finding that HB-6423 violates the First Amendment's Free Exercise Clause and is unconstitutional.

B. A declaratory judgment finding that HB-6423 violates the right to privacy and medical freedom under the First, Fourth, Fifth, and Fourteenth Amendments and is unconstitutional.

C. A declaratory judgment finding that HB-6423 violates the Fourteenth Amendment's Equal Protection Clause and is unconstitutional.

D. A declaratory judgment finding that HB-6423 violates the Fourteenth Amendment's Due Process Clause and is unconstitutional.

E. A permanent injunction enjoining the Defendants and their agents from enforcing any provision of HB-6423.

F. A declaratory judgment finding that the Individuals With Disabilities Education Act preempts HB-6432, and that HB-6432 violates the Individuals With Disabilities Education Act.

G. A declaratory judgment finding that the Individuals With Disabilities Education Act requires the Defendants to provide disabled children with a free appropriate public education in the least restrictive environment possible even if their parents decline to vaccinate them because of their religious beliefs.

H. Reasonable costs and attorney's fees.

I. Such other relief as this Court deems fair and equitable.

THE PLAINTIFFS

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com
Fed Bar. No.: ct13120


/s/ Brian D. Festa /s/
BRIAN D. FESTA, ESQ.
General Counsel
CT Freedom Alliance, LLC
123 Farmington Ave., Ste. 175
Tel: (860) 261-5605
brian@ctfreedomalliance.com
Bristol, CT 06010
Fed. Bar. No.: ct30963