# Exhibit A



**House of Representatives**

General Assembly

*January Session, 2021*

*File No. 431*

Substitute House Bill No. 6423

---

*House of Representatives, April 14, 2021*

The Committee on Public Health reported through REP. STEINBERG of the 136th Dist., Chairperson of the Committee on the part of the House, that the substitute bill ought to pass.

---

### AN ACT CONCERNING IMMUNIZATIONS.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

1     Section 1. Section 10-204a of the general statutes are repealed and the
2     following is substituted in lieu thereof (*Effective from passage*):

3     (a) Each local or regional board of education, or similar body
4     governing a nonpublic school or schools, shall require each child to be
5     protected by adequate immunization against diphtheria, pertussis,
6     tetanus, poliomyelitis, measles, mumps, rubella, **[**hemophilus**]**
7     <u>haemophilus</u> influenzae type B and any other vaccine required by the
8     schedule for active immunization adopted pursuant to section 19a-7f
9     before being permitted to enroll in any program operated by a public or
10     nonpublic school under its jurisdiction. Before being permitted to enter
11     seventh grade, a child shall receive a second immunization against
12     measles. Any such child who (1) presents a certificate from a physician,
13     physician assistant, advanced practice registered nurse or local health
14     agency stating that initial immunizations have been given to such child
15     and additional immunizations are in process <u>(A)</u> under guidelines and

16    schedules specified by the Commissioner of Public Health, or (B) in the
17    case of a child enrolled in sixth grade or below who, prior to the effective
18    date of this section, was exempt from the appropriate provisions of this
19    section upon presentation of a statement that such immunizations
20    would be contrary to the religious beliefs of such child or the parents or
21    guardian of such child, as such additional immunizations are
22    recommended, in a written declaration, in a form prescribed by the
23    Commissioner of Public Health, for such child by a physician, a
24    physician assistant or an advanced practice registered nurse; or (2)
25    presents a certificate, in a form prescribed by the commissioner
26    pursuant to section 7 of this act, from a physician, physician assistant or
27    advanced practice registered nurse stating that in the opinion of such
28    physician, physician assistant or advanced practice registered nurse
29    such immunization is medically contraindicated because of the physical
30    condition of such child; [or (3) presents a statement from the parents or
31    guardian of such child that such immunization would be contrary to the
32    religious beliefs of such child or the parents or guardian of such child,
33    which statement shall be acknowledged, in accordance with the
34    provisions of sections 1-32, 1-34 and 1-35, by (A) a judge of a court of
35    record or a family support magistrate, (B) a clerk or deputy clerk of a
36    court having a seal, (C) a town clerk, (D) a notary public, (E) a justice of
37    the peace, (F) an attorney admitted to the bar of this state, or (G)
38    notwithstanding any provision of chapter 6, a school nurse;] or [(4)] (3)
39    in the case of measles, mumps or rubella, presents a certificate from a
40    physician, physician assistant or advanced practice registered nurse or
41    from the director of health in such child's present or previous town of
42    residence, stating that the child has had a confirmed case of such
43    disease; or [(5)] (4) in the case of [hemophilus] haemophilus influenzae
44    type B has passed [his] such child's fifth birthday; or [(6)] (5) in the case
45    of pertussis, has passed [his] such child's sixth birthday, shall be exempt
46    from the appropriate provisions of this section. [If the parents or
47    guardians of any child are unable to pay for such immunizations, the
48    expense of such immunizations shall, on the recommendations of such
49    board of education, be paid by the town. Before being permitted to enter
50    seventh grade, the parents or guardian of any child who is exempt on

Case 3:21-cv-00597-JBA   Document 1-1   Filed 04/30/21   Page 4 of 36

51  religious grounds from the immunization requirements of this section,
52  pursuant to subdivision (3) of this subsection, shall present to such
53  school a statement that such immunization requirements are contrary to
54  the religious beliefs of such child or the parents or guardian of such
55  child, which statement shall be acknowledged, in accordance with the
56  provisions of sections 1-32, 1-34 and 1-35, by (A) a judge of a court of
57  record or a family support magistrate, (B) a clerk or deputy clerk of a
58  court having a seal, (C) a town clerk, (D) a notary public, (E) a justice of
59  the peace, (F) an attorney admitted to the bar of this state, or (G)
60  notwithstanding any provision of chapter 6, a school nurse.**]** The
61  statement described in subparagraph (B) of subdivision (1) of this
62  subsection shall be acknowledged, in accordance with the provisions of
63  sections 1-32, 1-34 and 1-35, by a judge of a court of record or a family
64  support magistrate, a clerk or deputy clerk of a court having a seal, a
65  town clerk, a notary public, a justice of the peace, an attorney admitted
66  to the bar of this state, or notwithstanding any provision of chapter 6, a
67  school nurse.

68      (b) The immunization requirements provided for in subsection (a) of
69  this section shall not apply to any child who is enrolled in seventh grade
70  through twelfth grade on or before the effective date of this section if
71  such child presented a statement, prior to the effective date of this
72  section, from the parents or guardian of such child that such
73  immunization is contrary to the religious beliefs of such child or the
74  parents or guardian of such child, and such statement was
75  acknowledged, in accordance with the provisions of sections 1-32, 1-34
76  and 1-35, by (1) a judge of a court of record or a family support
77  magistrate, (2) a clerk or deputy clerk of a court having a seal, (3) a town
78  clerk, (4) a notary public, (5) a justice of the peace, (6) an attorney
79  admitted to the bar of this state, or (7) notwithstanding any provision of
80  chapter 6, a school nurse.

81      (c) Any child who is enrolled in sixth grade or below prior to the
82  effective date of this section who presented a statement, prior to the
83  effective date of this section, from the parents or guardian of such child
84  that the immunization is contrary to the religious beliefs of such child

85    or the parents or guardian of such child, which statement was
86    acknowledged, in accordance with the provisions of sections 1-32, 1-34
87    and 1-35, by (1) a judge of a court of record or a family support
88    magistrate, (2) a clerk or deputy clerk of a court having a seal, (3) a town
89    clerk, (4) a notary public, (5) a justice of the peace, (6) an attorney
90    admitted to the bar of this state, or (7) notwithstanding any provision of
91    chapter 6, a school nurse, but did not present a written declaration from
92    a physician, a physician assistant or an advanced practice registered
93    nurse stating that additional immunizations are in process as
94    recommended by such physician, physician assistant or advanced
95    practice registered nurse, rather than as recommended under guidelines
96    and schedules specified by the Commissioner of Public Health, shall
97    comply with the immunization requirements provided for in
98    subparagraph (A) of subdivision (1) of subsection (a) of this section on
99    or before September 1, 2022, or not later than fourteen days after
100   transferring to a program operated by a public or nonpublic school
101   under the jurisdiction of a local or regional board of education or similar
102   body governing a nonpublic school or schools, whichever is later.

103       (d) If the parents or guardian of any child are unable to pay for any
104   immunization required by subsection (a) of this section, the expense of
105   such immunization shall, on the recommendation of such child's local
106   or regional board of education, or similar body governing a nonpublic
107   school or schools, be paid by the town.

108       **[**(b)**]** (e) The definitions of adequate immunization shall reflect the
109   schedule for active immunization adopted pursuant to section 19a-7f
110   and be established by regulation adopted in accordance with the
111   provisions of chapter 54 by the Commissioner of Public Health, who
112   shall also be responsible for providing procedures under which **[**said**]**
113   such boards and **[**said**]** such similar governing bodies shall collect and
114   report immunization data on each child to the Department of Public
115   Health for (1) compilation and analysis by **[**said**]** the department, and
116   (2) release by the department of annual immunization rates for each
117   public and nonpublic school in the state, provided such immunization
118   data may not contain information that identifies a specific individual.

119    **[**(c)**]** (f) The Commissioner of Public Health may issue a temporary
120    waiver to the schedule for active immunization for any vaccine if the
121    National Centers for Disease Control and Prevention recognizes a
122    nation-wide shortage of supply for such vaccine.

123    Sec. 2. Section 19a-25 of the general statutes is repealed and the
124    following is substituted in lieu thereof (*Effective from passage*):

125    (a) All information, records of interviews, written reports, statements,
126    notes, memoranda or other data, including personal data as defined in
127    subdivision (9) of section 4-190, procured by: **[**the**]** (1) The Department
128    of Public Health, by staff committees of facilities accredited by the
129    Department of Public Health or the maternity mortality review
130    committee, established pursuant to section 19a-59i, in connection with
131    studies of morbidity and mortality conducted by the Department of
132    Public Health, such staff committees or the maternal mortality review
133    committee, or carried on by said department, such staff committees or
134    the maternal mortality review committee jointly with other persons,
135    agencies or organizations, **[**or procured by**]** (2) the directors of health of
136    towns, cities or boroughs or the Department of Public Health pursuant
137    to section 19a-215, or **[**procured by**]** (3) such other persons, agencies or
138    organizations, for the purpose of reducing the morbidity or mortality
139    from any cause or condition, shall be confidential and shall be used
140    solely for the purposes of medical or scientific research and, for
141    information obtained pursuant to section 19a-215, disease prevention
142    and control by the local director of health and the Department of Public
143    Health. Such information, records, reports, statements, notes,
144    memoranda or other data shall not be admissible as evidence in any
145    action of any kind in any court or before any other tribunal, board,
146    agency or person, nor shall it be exhibited or its contents disclosed in
147    any way, in whole or in part, by any officer or representative of the
148    Department of Public Health or of any such facility, by any person
149    participating in such a research project or by any other person, except
150    as may be necessary for the purpose of furthering the research project to
151    which it relates.

152    (b) Notwithstanding the provisions of chapter 55, the Department of
153    Public Health may exchange personal data for the purpose of medical
154    or scientific research, with any other governmental agency or private
155    research organization; provided such state, governmental agency or
156    private research organization shall not further disclose such personal
157    data. The Commissioner of Public Health shall adopt regulations, in
158    accordance with the provisions of chapter 54, consistent with the
159    purposes of this section to establish the procedures to ensure the
160    confidentiality of such disclosures. The furnishing of such information
161    to the Department of Public Health or its authorized representative, or
162    to any other agency cooperating in such a research project, shall not
163    subject any person, hospital, [sanitarium] behavioral health facility, rest
164    home, nursing home or other person or agency furnishing such
165    information to any action for damages or other relief because of such
166    disclosure. [This section shall not be deemed to affect disclosure.]

167    (c) The provisions of this section shall not affect: (1) Disclosure of
168    regular hospital and medical records made in the course of the regular
169    notation of the care and treatment of any patient, but only records or
170    notations by [such] the staff committees described in subsection (a) of
171    this section pursuant to their work, or (2) release by the Department of
172    Public Health of annual immunization rates for each public and
173    nonpublic school in the state pursuant to section 10-204a, as amended
174    by this act.

175    Sec. 3. Section 10a-155 of the general statutes is repealed and the
176    following is substituted in lieu thereof (*Effective from passage*):

177    (a) Each institution of higher education shall require each full-time or
178    matriculating student born after December 31, 1956, to provide proof of
179    adequate immunization against measles, rubella, [and on and after
180    August 1, 2010, to provide proof of adequate immunization against]
181    mumps and varicella as recommended by the national Advisory
182    Committee for Immunization Practices before permitting such student
183    to enroll in such institution. [Any such]

184    (b) Notwithstanding the provisions of subsection (a) of this section,

185  any student who (1) presents a certificate, in a form prescribed by the
186  Commissioner of Public Health pursuant to section 7 of this act, from a
187  physician, a physician assistant or an advanced practice registered nurse
188  stating that in the opinion of such physician, physician assistant or
189  advanced practice registered nurse such immunization is medically
190  contraindicated, (2) **[**provides**]** prior to the effective date of this section,
191  provided a statement that such immunization **[**would be**]** is contrary to
192  his or her religious beliefs, (3) presents a certificate from a physician, a
193  physician assistant, an advanced practice registered nurse or the
194  director of health in the student's present or previous town of residence,
195  stating that the student has had a confirmed case of such disease, (4) is
196  enrolled exclusively in a program for which students do not congregate
197  on campus for classes or to participate in institutional-sponsored events,
198  such as students enrolled in distance learning programs for
199  individualized home study or programs conducted entirely through
200  electronic media in a setting without other students present, or (5)
201  graduated from a public or nonpublic high school in this state in 1999 or
202  later and was not exempt from the measles, rubella and **[**on and after
203  August 1, 2010, the**]** mumps vaccination requirement pursuant to
204  subdivision (2) **[**or (3)**]** of subsection (a) of section 10-204a, as amended
205  by this act, shall be exempt from the appropriate provisions of this
206  section.

207  **[**(b)**]** (c) Each institution of higher education shall keep uniform
208  records of the immunizations and immunization status of each student,
209  based on the certificate of immunization or other evidence acceptable
210  pursuant to subsection **[**(a)**]** (b) of this section. The record shall be part
211  of the student's permanent record. By November first of each year, the
212  chief administrative officer of each institution of higher education shall
213  cause to be submitted to the Commissioner of Public Health, on a form
214  provided by the commissioner, a summary report of the immunization
215  status of all students enrolling in such institution.

216  Sec. 4. Subsection (a) of section 10a-155b of the general statutes is
217  repealed and the following is substituted in lieu thereof (*Effective from*
218  *passage*):

219     (a) For students who first enroll in the 2014-2015 school year, and first
220     enroll in each school year thereafter, each public or private college or
221     university in this state shall require that each student who resides in on-
222     campus housing be vaccinated against meningitis and submit evidence
223     of having received a meningococcal conjugate vaccine not more than
224     five years before enrollment as a condition of such residence. The
225     provisions of this subsection shall not apply to any such student who (1)
226     presents a certificate, in a form prescribed by the Commissioner of
227     Public Health pursuant to section 7 of this act, from a physician, an
228     advanced practice registered nurse or a physician assistant stating that,
229     in the opinion of such physician, advanced practice registered nurse or
230     physician assistant, such vaccination is medically contraindicated
231     because of the physical condition of such student, or (2) [presents] prior
232     to the effective date of this section, presented a statement that such
233     vaccination [would be] is contrary to the religious beliefs of such
234     student.

235     Sec. 5. Section 19a-79 of the general statutes is repealed and the
236     following is substituted in lieu thereof (*Effective from passage*):

237     (a) The Commissioner of Early Childhood shall adopt regulations, in
238     accordance with the provisions of chapter 54, to carry out the purposes
239     of sections 19a-77 to 19a-80, inclusive, and 19a-82 to 19a-87, inclusive,
240     and to assure that child care centers and group child care homes meet
241     the health, educational and social needs of children utilizing such child
242     care centers and group child care homes. Such regulations shall (1)
243     specify that before being permitted to attend any child care center or
244     group child care home, each child shall be protected as age-appropriate
245     by adequate immunization against diphtheria, pertussis, tetanus,
246     poliomyelitis, measles, mumps, rubella, [hemophilus] haemophilus
247     influenzae type B and any other vaccine required by the schedule of
248     active immunization adopted pursuant to section 19a-7f, [including
249     appropriate exemptions for children for whom such immunization is
250     medically contraindicated and for children whose parent or guardian
251     objects to such immunization on religious grounds, and that any
252     objection by a parent or a guardian to immunization of a child on

253  religious grounds shall be accompanied by a statement from such parent
254  or guardian that such immunization would be contrary to the religious
255  beliefs of such child or the parent or guardian of such child, which
256  statement shall be acknowledged, in accordance with the provisions of
257  sections 1-32, 1-34 and 1-35, by (A) a judge of a court of record or a family
258  support magistrate, (B) a clerk or deputy clerk of a court having a seal,
259  (C) a town clerk, (D) a notary public, (E) a justice of the peace, or (F) an
260  attorney admitted to the bar of this state,] (2) specify conditions under
261  which child care center directors and teachers and group child care
262  home providers may administer tests to monitor glucose levels in a child
263  with  diagnosed  diabetes  mellitus,  and  administer  medicinal
264  preparations, including controlled drugs specified in the regulations by
265  the commissioner, to a child receiving child care services at such child
266  care center or group child care home pursuant to the written order of a
267  physician licensed to practice medicine or a dentist licensed to practice
268  dental medicine in this or another state, or an advanced practice
269  registered nurse licensed to prescribe in accordance with section 20-94a,
270  or a physician assistant licensed to prescribe in accordance with section
271  20-12d, and the written authorization of a parent or guardian of such
272  child, (3) specify that an operator of a child care center or group child
273  care home, licensed before January 1, 1986, or an operator who receives
274  a license after January 1, 1986, for a facility licensed prior to January 1,
275  1986, shall provide a minimum of thirty square feet per child of total
276  indoor usable space, free of furniture except that needed for the
277  children's purposes, exclusive of toilet rooms, bathrooms, coatrooms,
278  kitchens, halls, isolation room or other rooms used for purposes other
279  than the activities of the children, (4) specify that a child care center or
280  group child care home licensed after January 1, 1986, shall provide
281  thirty-five square feet per child of total indoor usable space, (5) establish
282  appropriate child care center staffing requirements for employees
283  certified in cardiopulmonary resuscitation by the American Red Cross,
284  the American Heart Association, the National Safety Council, American
285  Safety and Health Institute, Medic First Aid International, Inc. or an
286  organization using guidelines for cardiopulmonary resuscitation and
287  emergency cardiovascular care published by the American Heart

288     Association and International Liaison Committee on Resuscitation, (6)
289     specify that **[**on and after January 1, 2003,**]** a child care center or group
290     child care home (A) shall not deny services to a child on the basis of a
291     child's known or suspected allergy or because a child has a prescription
292     for an automatic prefilled cartridge injector or similar automatic
293     injectable equipment used to treat an allergic reaction, or for injectable
294     equipment used to administer glucagon, (B) shall, not later than three
295     weeks after such child's enrollment in such a center or home, have staff
296     trained in the use of such equipment on-site during all hours when such
297     a child is on-site, (C) shall require such child's parent or guardian to
298     provide the injector or injectable equipment and a copy of the
299     prescription for such medication and injector or injectable equipment
300     upon enrollment of such child, and (D) shall require a parent or
301     guardian enrolling such a child to replace such medication and
302     equipment prior to its expiration date, (7) specify that **[**on and after
303     January 1, 2005,**]** a child care center or group child care home (A) shall
304     not deny services to a child on the basis of a child's diagnosis of asthma
305     or because a child has a prescription for an inhalant medication to treat
306     asthma, and (B) shall, not later than three weeks after such child's
307     enrollment in such a center or home, have staff trained in the
308     administration of such medication on-site during all hours when such a
309     child is on-site, and (8) establish physical plant requirements for
310     licensed child care centers and licensed group child care homes that
311     exclusively serve school-age children. When establishing such
312     requirements, the Office of Early Childhood shall give consideration to
313     child care centers and group child care homes that are located in private
314     or public school buildings. With respect to this subdivision only, the
315     commissioner shall implement policies and procedures necessary to
316     implement the physical plant requirements established pursuant to this
317     subdivision while in the process of adopting such policies and
318     procedures in regulation form. Until replaced by policies and
319     procedures implemented pursuant to this subdivision, any physical
320     plant requirement specified in the office's regulations that is generally
321     applicable to child care centers and group child care homes shall
322     continue to be applicable to such centers and homes that exclusively

323   serve school-age children. The commissioner shall **[**print**]** post notice of
324   the intent to adopt regulations pursuant to this subdivision on the
325   eRegulations System not later than twenty days after the date of
326   implementation of such policies and procedures. Policies and
327   procedures implemented pursuant to this subdivision shall be valid
328   until the time final regulations are adopted.

329       (b) Any child who (1) presents a certificate, in a form prescribed by
330   the Commissioner of Public Health pursuant to section 7 of this act,
331   signed by a physician, a physician assistant or an advanced practice
332   registered nurse stating that, in the opinion of such physician, physician
333   assistant or advanced practice registered nurse, the immunizations
334   required pursuant to regulations adopted pursuant to subdivision (1) of
335   subsection (a) of this section are medically contraindicated, (2) in the
336   case of a child who is enrolled in seventh grade through twelfth grade,
337   presented a statement, prior to the effective date of this section, that such
338   immunizations are contrary to the religious beliefs of such child or the
339   parents or guardian of such child, or (3) in the case of a child who is
340   enrolled in sixth grade or below, (A) presented a statement, prior to the
341   effective date of this section, that such immunizations are contrary to
342   the religious beliefs of such child or the parents or guardian of such
343   child, and (B) presents a written declaration, in a form prescribed by the
344   Commissioner of Public Health, from a physician, a physician assistant
345   or an advanced practice registered nurse stating that an immunization
346   against diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps,
347   rubella, haemophilus influenzae type B and any other vaccine required
348   by the schedule of active immunization adopted pursuant to section
349   19a-7f has been given to such child and that any additional necessary
350   immunizations of such student against diphtheria, pertussis, tetanus,
351   poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B
352   and any other vaccine required by such schedule of active immunization
353   are in process under guidelines specified by the Commissioner of Public
354   Health or as recommended for the child by the physician, physician
355   assistant or advanced practice registered nurse, shall be exempt from
356   the immunization requirements set forth in such regulations. The
357   statement described in subparagraph (A) of subdivision (3) of this

358  subsection shall be acknowledged, in accordance with the provisions of
359  sections 1-32, 1-34 and 1-35, by a judge of a court of record or a family
360  support magistrate, a clerk or deputy clerk of a court having a seal, a
361  town clerk, a notary public, a justice of the peace, or an attorney
362  admitted to the bar of this state.

363      (c) Any child who is enrolled in sixth grade or below on or before the
364  effective date of this section who presented, prior to the effective date of
365  this section, the statement described in subparagraph (A) of subdivision
366  (3) of subsection (b) of this section, but did not present the written
367  declaration described in subparagraph (B) of subdivision (3) of
368  subsection (b) of this section, shall comply, on or before September 1,
369  2022, or not later than fourteen days after applying to enroll in the child
370  care center or group child care home, whichever is later, with the
371  immunization requirements set forth in the regulations adopted
372  pursuant to subdivision (1) of subsection (a) of this section.

373      **[**(b)**]** (d) The commissioner may adopt regulations, pursuant to
374  chapter 54, to establish civil penalties of not more than one hundred
375  dollars per day for each day of violation and other disciplinary remedies
376  that may be imposed, following a contested-case hearing, upon the
377  holder of a license issued under section 19a-80 to operate a child care
378  center or group child care home or upon the holder of a license issued
379  under section 19a-87b, as amended by this act, to operate a family child
380  care home.

381      **[**(c)**]** (e) The commissioner shall exempt Montessori schools
382  accredited by the American Montessori Society or the Association
383  Montessori Internationale from any provision in regulations adopted
384  pursuant to subsection (a) of this section which sets requirements on
385  group size or child to staff ratios or the provision of cots.

386      **[**(d)**]** (f) Upon the declaration by the Governor of a civil preparedness
387  emergency pursuant to section 28-9 or a public health emergency
388  pursuant to section 19a-131a, the commissioner may waive the
389  provisions of any regulation adopted pursuant to this section if the
390  commissioner determines that such waiver would not endanger the life,

391  safety or health of any child. The commissioner shall prescribe the
392  duration of such waiver, provided such waiver shall not extend beyond
393  the duration of the declared emergency. The commissioner shall
394  establish the criteria by which a waiver request shall be made and the
395  conditions for which a waiver will be granted or denied. The provisions
396  of section 19a-84 shall not apply to a denial of a waiver request under
397  this subsection.

398  **[**(e)**]** (g) Any child care center or group child care home may provide
399  child care services to homeless children and youths, as defined in 42
400  USC 11434a, as amended from time to time, for a period not to exceed
401  ninety days without complying with any provision in regulations
402  adopted pursuant to this section relating to immunization and physical
403  examination requirements. Any child care center or group child care
404  home that provides child care services to homeless children and youths
405  at such center or home under this subsection shall maintain a record on
406  file of all homeless children and youths who have attended such center
407  or home for a period of two years after such homeless children or youths
408  are no longer receiving child care services at such center or home.

409  **[**(f)**]** (h) Any child care center or group child care home may provide
410  child care services to a foster child for a period not to exceed forty-five
411  days without complying with any provision in regulations adopted
412  pursuant to this section relating to immunization and physical
413  examination requirements. Any child care center or group child care
414  home that provides child care services to a foster child at such center or
415  home under this subsection shall maintain a record on file of such foster
416  child for a period of two years after such foster child is no longer
417  receiving child care services at such center or home. For purposes of this
418  subsection, "foster child" means a child who is in the care and custody
419  of the Commissioner of Children and Families and placed in a foster
420  home licensed pursuant to section 17a-114, foster home approved by a
421  child-placing agency licensed pursuant to section 17a-149, facility
422  licensed pursuant to section 17a-145 or with a relative or fictive kin
423  caregiver pursuant to section 17a-114.

424      Sec. 6. Section 19a-87b of the general statutes is repealed and the
425  following is substituted in lieu thereof (*Effective from passage*):

426      (a) No person, group of persons, association, organization,
427  corporation, institution or agency, public or private, shall maintain a
428  family child care home, as defined in section 19a-77, without a license
429  issued by the Commissioner of Early Childhood. Licensure forms shall
430  be obtained from the Office of Early Childhood. Applications for
431  licensure shall be made to the commissioner on forms provided by the
432  office and shall contain the information required by regulations adopted
433  under this section. The licensure and application forms shall contain a
434  notice that false statements made therein are punishable in accordance
435  with section 53a-157b. Applicants shall state, in writing, that they are in
436  compliance with the regulations adopted by the commissioner pursuant
437  to subsection (f) of this section. Before a family child care home license
438  is granted, the office shall make an inquiry and investigation which shall
439  include a visit and inspection of the premises for which the license is
440  requested. Any inspection conducted by the office shall include an
441  inspection for evident sources of lead poisoning. The office shall provide
442  for a chemical analysis of any paint chips found on such premises.
443  Neither the commissioner nor the commissioner's designee shall require
444  an annual inspection for homes seeking license renewal or for licensed
445  homes, except that the commissioner or the commissioner's designee
446  shall make an unannounced visit, inspection or investigation of each
447  licensed family child care home at least once every year. A licensed
448  family child care home shall not be subject to any conditions on the
449  operation of such home by local officials, other than those imposed by
450  the office pursuant to this subsection, if the home complies with all local
451  codes and ordinances applicable to single and multifamily dwellings.

452      (b) No person shall act as an assistant or substitute staff member to a
453  person or entity maintaining a family child care home, as defined in
454  section 19a-77, without an approval issued by the commissioner. Any
455  person seeking to act as an assistant or substitute staff member in a
456  family child care home shall submit an application for such approval to
457  the office. Applications for approval shall: (1) Be made to the

458  commissioner on forms provided by the office, (2) contain the
459  information required by regulations adopted under this section, and (3)
460  be accompanied by a fee of fifteen dollars. The approval application
461  forms shall contain a notice that false statements made in such form are
462  punishable in accordance with section 53a-157b.

463      (c) The commissioner, within available appropriations, shall require
464  each initial applicant or prospective employee of a family child care
465  home in a position requiring the provision of care to a child, including
466  an assistant or substitute staff member and each household member
467  who is sixteen years of age or older, to submit to comprehensive
468  background checks, including state and national criminal history
469  records checks. The criminal history records checks required pursuant
470  to this subsection shall be conducted in accordance with section 29-17a.
471  The commissioner shall also request a check of the state child abuse
472  registry established pursuant to section 17a-101k. The commissioner
473  shall notify each licensee of the provisions of this subsection. For
474  purposes of this subsection, "household member" means any person,
475  other than the person who is licensed to conduct, operate or maintain a
476  family child care home, who resides in the family child care home, such
477  as the licensee's spouse or children, tenants and any other occupant.

478      (d) An application for initial licensure pursuant to this section shall
479  be accompanied by a fee of forty dollars and such license shall be issued
480  for a term of four years. An application for renewal of a license issued
481  pursuant to this section shall be accompanied by a fee of forty dollars
482  and a certification from the licensee that any child enrolled in the family
483  child care home has received age-appropriate immunizations in
484  accordance with regulations adopted pursuant to subsection (f) of this
485  section. A license issued pursuant to this section shall be renewed for a
486  term of four years. In the case of an applicant submitting an application
487  for renewal of a license that has expired, and who has ceased operations
488  of a family child care home due to such expired license, the
489  commissioner may renew such expired license within thirty days of the
490  date of such expiration upon receipt of an application for renewal that
491  is accompanied by such fee and such certification.

492     (e) An application for initial staff approval or renewal of staff
493     approval shall be accompanied by a fee of fifteen dollars. Such
494     approvals shall be issued or renewed for a term of two years.

495     (f) The commissioner shall adopt regulations, in accordance with the
496     provisions of chapter 54, to assure that family child care homes, as
497     defined in section 19a-77, meet the health, educational and social needs
498     of children utilizing such homes. Such regulations shall ensure that the
499     family child care home is treated as a residence, and not an institutional
500     facility. Such regulations shall specify that each child be protected as
501     age-appropriate by adequate immunization against diphtheria,
502     pertussis, tetanus, poliomyelitis, measles, mumps, rubella,
503     [hemophilus] haemophilus influenzae type B and any other vaccine
504     required by the schedule of active immunization adopted pursuant to
505     section 19a-7f. [Such regulations shall provide appropriate exemptions
506     for children for whom such immunization is medically contraindicated
507     and for children whose parents or guardian objects to such
508     immunization on religious grounds and require that any such objection
509     be accompanied by a statement from such parents or guardian that such
510     immunization would be contrary to the religious beliefs of such child or
511     the parents or guardian of such child, which statement shall be
512     acknowledged, in accordance with the provisions of sections 1-32, 1-34
513     and 1-35, by (1) a judge of a court of record or a family support
514     magistrate, (2) a clerk or deputy clerk of a court having a seal, (3) a town
515     clerk, (4) a notary public, (5) a justice of the peace, or (6) an attorney
516     admitted to the bar of this state.] Such regulations shall also specify
517     conditions under which family child care home providers may
518     administer tests to monitor glucose levels in a child with diagnosed
519     diabetes mellitus, and administer medicinal preparations, including
520     controlled drugs specified in the regulations by the commissioner, to a
521     child receiving child care services at a family child care home pursuant
522     to a written order of a physician licensed to practice medicine in this or
523     another state, an advanced practice registered nurse licensed to
524     prescribe in accordance with section 20-94a or a physician assistant
525     licensed to prescribe in accordance with section 20-12d, and the written
526     authorization of a parent or guardian of such child. Such regulations

527   shall specify appropriate standards for extended care and intermittent
528   short-term overnight care. The commissioner shall inform each licensee,
529   by way of a plain language summary provided not later than sixty days
530   after the regulation's effective date, of any new or changed regulations
531   adopted under this subsection with which a licensee must comply.

532       (g) Any child who (1) presents a certificate, in a form prescribed by
533   the Commissioner of Public Health pursuant to section 7 of this act,
534   signed by a physician, a physician assistant or an advanced practice
535   registered nurse stating that, in the opinion of such physician, physician
536   assistant or advanced practice registered nurse, the immunizations
537   required pursuant to regulations adopted pursuant to subsection (f) of
538   this section are medically contraindicated, (2) in the case of a child who
539   is enrolled in seventh grade through twelfth grade, presented a
540   statement, prior to the effective date of this section, that such
541   immunizations are contrary to the religious beliefs of such child or the
542   parents or guardian of such child, or (3) in the case of a child who is
543   enrolled in sixth grade or below, (A) presented a statement, prior to the
544   effective date of this section, that such immunizations are contrary to
545   the religious beliefs of such child or the parents or guardian of such
546   child, and (B) presents a written declaration, in a form prescribed by the
547   Commissioner of Public Health, from a physician, physician assistant or
548   advanced practice registered nurse stating that an immunization against
549   diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella,
550   haemophilus influenzae type B and any other vaccine required by the
551   schedule of active immunization adopted pursuant to section 19a-7f has
552   been given to such child and that any additional necessary
553   immunizations of such student against diphtheria, pertussis, tetanus,
554   poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B
555   and any other vaccine required by such schedule of active immunization
556   are in process under guidelines specified by the Commissioner of Public
557   Health or as recommended for the child by the physician, physician
558   assistant or advanced practice registered nurse, shall be exempt from
559   the immunization requirements set forth in such regulations. The
560   statement described in subparagraph (A) of subdivision (3) of this
561   subsection shall be acknowledged, in accordance with the provisions of

562 sections 1-32, 1-34 and 1-35, by (i) a judge of a court of record or a family
563 support magistrate, (ii) a clerk or deputy clerk of a court having a seal,
564 (iii) a town clerk, (iv) a notary public, (v) a justice of the peace, or (vi) an
565 attorney admitted to the bar of this state.

566     (h) Any child who is enrolled in sixth grade or below on or before the
567 effective date of this section who presented, prior to the effective date of
568 this section, the statement described in subparagraph (A) of subdivision
569 (3) of subsection (g) of this section, but did not present the written
570 declaration described in subparagraph (B) of subdivision (3) of
571 subsection (g) of this section shall comply, on or before September 1,
572 2022, or not later than fourteen days after applying to enroll in the family
573 child care home, whichever is later, with the immunization
574 requirements set forth in the regulations adopted pursuant to subsection
575 (f) of this section.

576     **[(g)]** (i) Upon the declaration by the Governor of a civil preparedness
577 emergency pursuant to section 28-9 or a public health emergency
578 pursuant to section 19a-131a, the commissioner may waive the
579 provisions of any regulation adopted pursuant to this section if the
580 commissioner determines that such waiver would not endanger the life,
581 safety or health of any child. The commissioner shall prescribe the
582 duration of such waiver, provided such waiver shall not extend beyond
583 the duration of the declared emergency. The commissioner shall
584 establish the criteria by which a waiver request shall be made and the
585 conditions for which a waiver will be granted or denied. The provisions
586 of section 19a-84 shall not apply to a denial of a waiver request under
587 this subsection.

588     **[(h)]** (j) Any family child care home may provide child care services
589 to homeless children and youths, as defined in 42 USC 11434a, as
590 amended from time to time, for a period not to exceed ninety days
591 without complying with any provision in regulations adopted pursuant
592 to this section relating to immunization and physical examination
593 requirements. Any family child care home that provides child care
594 services to homeless children and youths at such home under this

595 subsection shall maintain a record on file of all homeless children and
596 youths who have attended such home for a period of two years after
597 such homeless children or youths are no longer receiving child care
598 services at such home.

599 **[**(i)**]** (k) Any family child care home may provide child care services
600 to a foster child for a period not to exceed forty-five days without
601 complying with any provision in regulations adopted pursuant to this
602 section relating to immunization and physical examination
603 requirements. Any family child care home that provides child care
604 services to a foster child at such home under this subsection shall
605 maintain a record on file of such foster child for a period of two years
606 after such foster child is no longer receiving child care services at such
607 home. For purposes of this subsection, "foster child" means a child who
608 is in the care and custody of the Commissioner of Children and Families
609 and placed in a foster home licensed pursuant to section 17a-114, foster
610 home approved by a child-placing agency licensed pursuant to section
611 17a-149, facility licensed pursuant to section 17a-145 or with a relative
612 or fictive kin caregiver pursuant to section 17a-114.

613 Sec. 7. (NEW) (*Effective from passage*) On or before October 1, 2021, the
614 Commissioner of Public Health shall develop and make available on the
615 Internet web site of the Department of Public Health a certificate for use
616 by a physician, physician assistant or advanced practice registered
617 nurse stating that, in the opinion of such physician, physician assistant
618 or advanced practice registered nurse, a vaccination required by the
619 general statutes is medically contraindicated for a person because of the
620 physical condition of such person. The certificate shall include (1)
621 definitions of the terms "contraindication" and "precaution", (2) a list of
622 contraindications and precautions recognized by the National Centers
623 for Disease Control and Prevention for each of the statutorily required
624 vaccinations, from which the physician, physician assistant or advanced
625 practice registered nurse may select the relevant contraindication or
626 precaution on behalf of such person, (3) a section in which the physician,
627 physician assistant or advanced practice registered nurse may record a
628 contraindication or precaution that is not recognized by the National

629 Centers for Disease Control and Prevention, but in his or her discretion,
630 results in the vaccination being medically contraindicated, including,
631 but not limited to, any autoimmune disorder, family history of any
632 autoimmune disorder, family history of any reaction to a vaccination,
633 genetic predisposition to any reaction to a vaccination as determined
634 through genetic testing and a previous documented reaction of a person
635 that is correlated to a vaccination, (4) a section in which the physician,
636 physician assistant or advanced practice registered nurse may include a
637 written explanation for the exemption from any statutorily required
638 vaccinations, (5) a section requiring the signature of the physician,
639 physician assistant or advanced practice registered nurse, (6) a
640 requirement that the physician, physician assistant or advanced practice
641 registered nurse attach such person's most current immunization
642 record, and (7) a synopsis of the grounds for any order of quarantine or
643 isolation pursuant to section 19a-131b of the general statutes.

644 Sec. 8. (NEW) (*Effective from passage*) (a) There is established an
645 Advisory Committee on Medically Contraindicated Vaccinations within
646 the Department of Public Health for the purpose of advising the
647 Commissioner of Public Health on issues concerning exemptions from
648 state or federal requirements for vaccinations that result from a
649 physician, physician assistant or advanced practice registered nurse
650 stating that a vaccination is medically contraindicated for a person due
651 to the medical condition of such person. Said advisory committee shall
652 not be responsible for confirming or denying any determination by a
653 physician, physician assistant or advanced practice registered nurse that
654 a vaccination is medically contraindicated for a specific individual. In
655 order to carry out its duties, the advisory committee shall (1) have access
656 to the childhood immunization registry established by the department
657 pursuant to section 19a-7h of the general statutes, (2) evaluate the
658 process used by the department in collecting data concerning
659 exemptions resulting from a vaccination being medically
660 contraindicated and whether the department should have any oversight
661 over such exemptions, (3) examine whether enrollment of an
662 unvaccinated child into a program operated by a public or nonpublic
663 school, institution of higher education, child care center or group child

664    care home should be conditioned upon the child meeting certain
665    criteria, (4) calculate the ratio of school nurses to students in each public
666    and nonpublic school in the state and the funding issues surrounding
667    such ratio, (5) assess whether immunizations should be required more
668    frequently than prior to enrollment into a program operated by a public
669    or nonpublic school and prior to entering seventh grade, and (6)
670    determine whether (A) there are any discrepancies in the issuance of
671    certificates stating that a vaccine is medically contraindicated, and (B) to
672    recommend continuing education of physicians, physician assistants or
673    advanced practice registered nurses in vaccine contraindications and
674    precautions. All information obtained by the advisory committee from
675    such registry shall be confidential pursuant to section 19a-25 of the
676    general statutes, as amended by this act.

677    (b) The advisory committee shall consist of the following members:

678    (1) Two appointed by the speaker of the House of Representatives,
679    one of whom shall be a physician licensed pursuant to chapter 370 of the
680    general statutes who is a pediatrician, and one of whom shall be a
681    member of the public;

682    (2) Two appointed by the president pro tempore of the Senate, one of
683    whom shall be a physician licensed pursuant to chapter 370 of the
684    general statutes who has expertise in the efficacy of vaccines, and one of
685    whom shall be a member of the public;

686    (3) One appointed by the majority leader of the House of
687    Representatives, who shall be a school nurse;

688    (4) One appointed by the majority leader of the Senate, who shall be
689    a physician assistant licensed pursuant to chapter 370 of the general
690    statutes who has experience in the administration of vaccines;

691    (5) One appointed by the minority leader of the House of
692    Representatives, who shall be an advanced practice registered nurse
693    licensed pursuant to chapter 378 of the general statutes who has
694    experience in the administration of vaccines;

695   (6) One appointed by the minority leader of the Senate, who shall be
696   a representative of the Connecticut Chapter of the American Academy
697   of Pediatrics;

698   (7) The Commissioner of Public Health, or the commissioner's
699   designee;

700   (8) The Commissioner of Education, or the commissioner's designee;
701   and

702   (9) The Commissioner of Early Childhood, or the commissioner's
703   designee.

704   (c) The members of the advisory committee shall elect a chairperson
705   of the advisory committee from among its members. Such chairperson
706   shall schedule the first meeting of the advisory committee, which shall
707   be held not later than October 1, 2021. The advisory committee shall
708   meet not less than biannually. On or before January 1, 2022, and
709   annually thereafter, the committee shall report, in accordance with the
710   provisions of section 11-4a of the general statutes, on its activities and
711   findings to the joint standing committee of the General Assembly
712   having cognizance of matters relating to public health.

713   Sec. 9. (NEW) (*Effective from passage*) The Department of Public
714   Health, in collaboration with the state Department of Education and the
715   Office of Early Childhood, shall evaluate all of the data collected by said
716   departments concerning exemptions from immunization requirements.
717   Not later than January 1, 2022, and annually thereafter, the
718   Commissioners of Public Health, Education and Early Childhood shall
719   jointly report, in accordance with the provisions of section 11-4a of the
720   general statutes, to the joint standing committees of the General
721   Assembly having cognizance of matters relating to public health and
722   education regarding the evaluation of such data.

723   Sec. 10. Subsection (a) of section 38a-492r of the general statutes is
724   repealed and the following is substituted in lieu thereof (*Effective January*
725   *1, 2022*):

726    (a) Each individual health insurance policy providing coverage of the
727  type specified in subdivisions (1), (2), (4), (11) and (12) of section 38a-469
728  delivered, issued for delivery, renewed, amended or continued in this
729  state that provides coverage for prescription drugs shall provide
730  **[**coverage for**]** (1) _coverage for_ immunizations recommended by the
731  American Academy of Pediatrics, American Academy of Family
732  Physicians and the American College of Obstetricians and
733  Gynecologists, and (2) _with respect to_ immunizations that have in effect
734  a recommendation from the Advisory Committee on Immunization
735  Practices of the Centers for Disease Control and Prevention with respect
736  to the individual involved_, coverage for such immunizations and at least_
737  _a twenty-minute consultation between such individual and a health care_
738  _provider authorized to administer such immunizations to such_
739  _individual_.

740    Sec. 11. Subsection (a) of section 38a-518r of the general statutes is
741  repealed and the following is substituted in lieu thereof (_Effective January_
742  _1, 2022_):

743    (a) Each group health insurance policy providing coverage of the type
744  specified in subdivisions (1), (2), (4), (11) and (12) of section 38a-469
745  delivered, issued for delivery, renewed, amended or continued in this
746  state that provides coverage for prescription drugs shall provide
747  **[**coverage for**]** (1) _coverage for_ immunizations recommended by the
748  American Academy of Pediatrics, American Academy of Family
749  Physicians and the American College of Obstetricians and
750  Gynecologists, and (2) _with respect to_ immunizations that have in effect
751  a recommendation from the Advisory Committee on Immunization
752  Practices of the Centers for Disease Control and Prevention with respect
753  to the individual involved_, coverage for such immunizations and at least_
754  _a twenty-minute consultation between such individual and a health care_
755  _provider authorized to administer such immunizations to such_
756  _individual_.

> This act shall take effect as follows and shall amend the following
> sections:

| Section 1 | *from passage* | 10-204a |
|-----------|----------------|---------|
| Sec. 2 | *from passage* | 19a-25 |
| Sec. 3 | *from passage* | 10a-155 |
| Sec. 4 | *from passage* | 10a-155b(a) |
| Sec. 5 | *from passage* | 19a-79 |
| Sec. 6 | *from passage* | 19a-87b |
| Sec. 7 | *from passage* | New section |
| Sec. 8 | *from passage* | New section |
| Sec. 9 | *from passage* | New section |
| Sec. 10 | *January 1, 2022* | 38a-492r(a) |
| Sec. 11 | *January 1, 2022* | 38a-518r(a) |

### *Statement of Legislative Commissioners:*

In Sections 1(b), 1(c), 1(d), 5(b), and 6(g), references to "guardians" were changed to "guardian" for consistency, in Section 3 (b), "subdivision (2) or (3)" was changed to "subdivision (2) [or (3)]" for accuracy and in Sections 10 and 11, "prescribe" was changed to "administer" for clarity.

*PH*          *Joint Favorable Subst.*

*The following Fiscal Impact Statement and Bill Analysis are prepared for the benefit of the members of the General Assembly, solely for purposes of information, summarization and explanation and do not represent the intent of the General Assembly or either chamber thereof for any purpose. In general, fiscal impacts are based upon a variety of informational sources, including the analyst's professional knowledge.  Whenever applicable, agency data is consulted as part of the analysis, however final products do not necessarily reflect an assessment from any specific department.*

### OFA Fiscal Note

**State Impact:**

| Agency Affected | Fund-Effect | FY 22 $ | FY 23 $ |
|---|---|---|---|
| Board of Regents for Higher Education | GF - Revenue Loss | Less than 1.4 million | Less than 1.4 million |
| Public Health, Dept. | IF - Cost | Less than $91,000 | Less than $91,000 |

Note: GF=General Fund; IF=Insurance Fund

**Municipal Impact:** None

### Explanation

This bill eliminates the religious exemption from immunization requirements for individuals attending public and private schools, child care centers, and group and family day care homes. This is anticipated to result in a cost to the Department of Public Health (DPH) of less than $91,000 annually to purchase vaccines for privately insured children who would not have been vaccinated in the absence of the passage of the bill.[1]

The bill grandfathers in individuals enrolled in 7th grade or higher who submitted a religious exemption prior to the bill's passage. Under the bill, individuals with prior religious exemptions who are enrolled in 6th grade or below generally must comply with immunization requirements.

The maximum annual DPH cost projection assumes, based on

---

[1] Funding to vaccinate children that are Medicaid-eligible, uninsured, underinsured, and/or American Indian or Alaska Native is provided by the Federal Vaccines for Children program.

national 2018 Census data, that 67% of school enterers with religious exemptions have private insurance. There were 1,536 RE in Connecticut for the 2020 school year. At least 1,075 students with religious exemptions are enrolled in grades K – 6. Assuming the same number of religious exemptions in each of FY 22 and FY 23, the maximum number of privately insured individuals that could be vaccinated due to the bill is approximately 720. Currently, the cost to fully vaccinate an insured Connecticut child 0-18 years of age with all recommended vaccines is approximately $2,400 per child (an average of $126 annually). The cost to DPH will vary based on several factors, including: (1) the number of privately insured individuals that would have procured a religious exemption that chooses to receive DPH-recommended vaccinations, rather than leave the state or become homeschooled, (2) the number of these individuals that are already vaccinated to some extent and for which preventable childhood diseases, (3) the utilization rate of combination vaccines, (4) the types of combination vaccines used, (5) the timing of vaccine administration, and (6) the price of vaccines.[2]

The bill is also anticipated to result in a potential revenue loss to the Board of Regents due to possible reduced enrollment, should prospective students who previously would have utilized a religious exemption continue to choose not to vaccinate themselves and, therefore, are unable to enroll.

The revenue loss to the Board of Regents for Higher Education is potential because it is possible that most, or all, of such prospective new students, will choose to receive vaccinations to enroll. The potential revenue loss may reach $1.4 million annually, beginning in FY 22, if few such prospective students choose to comply with the vaccination requirements. However, if many comply, the potential revenue loss will be minimal.

Of the potential Board of Regents revenue loss, up to $900,000 is

---

[2] DPH purchases vaccines through the Centers for Disease Control and Prevention contract that is negotiated between the vaccine manufacturers and the federal government each year.

associated with the possible total impact to the 12 community colleges, while up to $435,000 is associated with potential total impact to the four Connecticut State Universities.  The Connecticut State Universities may experience reduced tuition and fees revenue (up to approximately $260,000) as well as auxiliary revenue for room and board (up to an estimated $175,000).  These estimates are based on: (1) recent data on the number of new students enrolled who have a religious exemption from vaccination requirements, (2) FY 22 tuition and fees rates, and (3) the anticipated FY 22 percent of first-year Connecticut State Universities students who plan to live on-campus and therefore will pay the FY 22 average room and board rate of $13,548.

### The Out Years

The annualized ongoing cost to DPH identified above would continue into the future subject to: (1) the number of privately insured individuals that would have procured a religious exemption that choose to receive DPH-recommended vaccinations, rather than leave the state or become homeschooled, (2) the number of these individuals that are already vaccinated to some extent and for which preventable childhood diseases, (3) the utilization rate of combination vaccines, (4) the types of combination vaccines used, (5) the timing of vaccine administration, and (6) the price of vaccines. The potential revenue loss to the community colleges and the Connecticut State Universities will continue into the out years, dependent on the number of prospective students who choose not to vaccinate themselves that would have previously obtained a religious exemption, and any changes in the tuition, fees, room, and board rates.

### The Out Years

The annualized ongoing fiscal impact identified above would continue into the future subject to inflation.

**OLR Bill Analysis**

**sHB 6423**

***AN ACT CONCERNING IMMUNIZATIONS.***

**SUMMARY**

This bill eliminates the religious exemption from immunization requirements for individuals attending (1) public and private schools, including higher education institutions, and (2) child care centers and group and family day care homes. Under current law, individuals may opt out of vaccination if they present a statement that immunization would be contrary to their religious beliefs or, for minors, those of their parent or guardian (see BACKGROUND).

The bill grandfathers in individuals enrolled in 7th grade or higher who submitted a religious exemption prior to the bill's passage. Under the bill, individuals with prior religious exemptions who are enrolled in 6th grade or below generally must comply with immunization requirements by September 1, 2022, or within 14 days after transferring to a different school or applying to enroll at a different child care facility, whichever is later.

However, the bill allows these children to extend the timeframe within which they must comply with the immunization requirements if they present a written declaration from the child's physician, physician assistant (PA), or advanced practice registered nurse (APRN) that an alternative immunization schedule is recommended. This declaration must be acknowledged by a judge, family support magistrate, court clerk or deputy clerk, town clerk, notary public, justice of the peace, Connecticut attorney, or school nurse.

The bill also retains current law's medical exemption from these immunization requirements for individuals who can document that the immunization is medically contraindicated.

Additionally, the bill:

1. requires the Department of Public Health (DPH), by October 1, 2021, to develop and post on its website a medical exemption certificate for use by physicians, PAs, and APRNs (§ 7);

2. requires DPH to release annual immunization rates for each public and private K-12 school in the state, provided the data does not include individually-identifiable information (§§ 1 & 2);

3. establishes an 11-member DPH Advisory Committee on Medically Contraindicated Vaccinations to advise the commissioner on issues concerning medical exemptions from state or federal immunization requirements (§ 8);

4. requires the advisory committee to meet at least biannually and annually report on its activities and findings to the Public Health Committee, starting by January 1, 2022 (§ 8);

5. requires DPH, in collaboration with the Department of Education and the Office of Early Childhood, to evaluate data they collect on exemptions from immunization requirements, and these agencies to jointly report to the Public Health and Education committees on the evaluation annually, starting by January 1, 2022 (§ 9); and

6. requires certain health insurance policies that cover prescription drugs to cover at least a 20-minute immunization consultation between a patient and provider for vaccines recommended by the federal Centers for Disease Control and Prevention (CDC) (§§ 10 & 11).

Lastly, the bill makes minor, technical, and conforming changes.

EFFECTIVE DATE:  Upon passage, except for the insurance coverage provisions, which are effective January 1, 2022.

## § 7 — MEDICAL EXEMPTION CERTIFICATES

The bill requires the DPH commissioner, by October 1, 2021, to develop and post on the department's website, a certificate for use by physicians, PAs, and APRNs ("providers") that states that the provider believes that a required vaccination is medically contraindicated for an individual based on his or her physical condition.

The medical exemption certificate must include:

1.  definitions of "contraindication" and "precaution";

2.  a list of contraindications and precautions recognized by the CDC for each statutorily-required immunization from which the provider may select on behalf of an individual;

3.  a section where the provider may record a contraindication or precaution not recognized by the CDC, but that in the provider's discretion, results in the vaccination being medically contraindicated, including (a) an autoimmune disorder or family history of one, (b) family history of a reaction to a vaccine, (c) genetic predisposition to a vaccine reaction determined by genetic testing, and (d) a previous documented reaction correlated to a vaccine;

4.  a section where the provider may include a written explanation for the medical exemption;

5.  a section requiring the provider's signature;

6.  a requirement that the provider attach the individual's most current immunization record; and

7.  a synopsis of the grounds for any order of quarantine or isolation related to the exemption.

### § 8 — DPH ADVISORY COMMITTEE

#### *Duties*

The bill establishes an 11-member Advisory Committee on Medically

Contraindicated Vaccinations within DPH to advise the commissioner on issues concerning medical exemptions from state or federal immunization requirements. The committee is not responsible for confirming or denying any provider determination that a vaccine is medically contraindicated for an individual.

Under the bill, the advisory committee must:

8.  have access to the department's childhood immunization registry;

9.  evaluate the process DPH uses to collect medical exemption data and whether the department should have oversight of those exemptions;

10. examine whether enrolling an unvaccinated student in a school, higher education institution, or child care facility should be conditioned upon the individual meeting certain criteria;

11. calculate the ratio of school nurses to students in each public and private school in the state and any associated funding issues;

12. assess whether school immunizations should be required more frequently than prior to enrolling in public or private school and prior to entering 7th grade; and

13. determine whether (a) there are any discrepancies in issuing medical exemptions and (b) to recommend continuing education for providers in immunization contraindications and precautions.

The bill specifies that information the advisory committee obtains from the childhood immunization registry is confidential. By law, medical information, records, and other data obtained by DPH generally (1) are confidential and not subject to disclosure, (2) are not admissible as evidence in any court or agency proceeding, and (3) must be used solely for medical or scientific research or disease control and prevention purposes.

### *Membership*

Under the bill, the advisory committee members include:

14. one pediatrician and one member of the public, each appointed by the House speaker;

15. one physician with expertise in vaccine efficacy and one member of the public, each appointed by the Senate president pro tempore;

16. one school nurse, appointed by the House majority leader;

17. one PA with experience in administering vaccines, appointed by the Senate majority leader;

18. one APRN with experience in administering vaccines, appointed by the House minority leader;

19. one representative of the Connecticut Chapter of the American Academy of Pediatrics, appointed by the Senate minority leader; and

20. the education, early childhood, and public health commissioners, or their designees.

### *Meetings and Reports*

The bill requires the advisory committee to elect a chairperson from among its members. The chairperson must schedule the first meeting, which must be held by October 1, 2021, and the committee must meet at least biannually thereafter. The committee must also report on its activities and findings to the Public Health Committee annually, starting by January 1, 2022.

### §§ 10 & 11 — INSURANCE COVERAGE FOR IMMUNIZATION CONSULTATIONS

The bill requires certain health insurance policies that cover prescription drugs to cover at least a 20-minute immunization consultation between a patient and a provider authorized to administer

them (e.g., a physician or advanced practice registered nurse). Coverage is only for consultations on immunizations recommended for the patient by the CDC's Advisory Committee on Immunization Practices (ACIP) (see BACKGROUND).

The bill applies to individual and group health insurance policies delivered, issued, renewed, amended, or continued in Connecticut that cover (1) basic hospital expenses; (2) basic medical-surgical expenses; (3) major medical expenses; or (4) hospital or medical services, including those provided under an HMO plan. Because of the federal Employee Retirement Income Security Act (ERISA), state insurance benefit mandates do not apply to self-insured benefit plans.

**BACKGROUND**

***Religious Exemption from Immunization Requirements***

Under current law, the religious exemption statement must be officially acknowledged by one of specified individuals (e.g., notary public, town clerk, or school nurse). The parents or guardian must submit the religious exemption statement (1) before the student enrolls in public or private school and (2) before the student enrolls in seventh grade.

The same requirements for school children apply to children at child care settings, including day care centers and family and group day care homes.

Higher education students must submit the statement prior to enrollment. The form for these students does not need to be officially acknowledged.

***Childhood Immunization Requirements***

For school children, Connecticut law requires immunization against the following diseases (the specific immunization schedule varies by disease):

21. measles, mumps, and rubella;

22. polio;

23. diphtheria, tetanus, pertussis;

24. haemophilus influenza B (only if under age 5);

25. hepatitis A and B;

26. varicella (chicken pox);

27. influenza (only for preschool);

28. pneumonia (only if under age 5); and

29. meningitis (7th grade) (CGS § 10-204a and Conn. Agencies Regs. §§ 10-204a-1 et seq.).

The same requirements apply to children at child care settings, including day care centers and group and family day care homes (Conn. Agencies Regs., §§ 19a-79-6a & 19a-87b-10(k)).

### Higher Education Immunization Requirements

Connecticut law generally requires full-time students attending in-state post-secondary institutions to provide proof of adequate immunization against measles, mumps, and rubella and chicken pox (CGS § 10a-155). The law also requires each student who lives in on-campus housing to be vaccinated against meningitis (CGS § 10a-155b).

### Insurance Coverage for Immunizations

Existing law requires health insurance policies that cover prescription drugs to also cover certain immunizations for children, adolescents, and adults. Specifically, they must cover immunizations (1) recommended by the American Academy of Pediatrics, American Academy of Family Physicians, and the American College of Obstetricians and Gynecologists and (2) that have, in effect, a recommendation from the CDC's ACIP with respect to the individual involved. These include, among others, immunizations for influenza, meningitis, tetanus, HPV, hepatitis A and B, measles, mumps, rubella,

and varicella.

## COMMITTEE ACTION

Public Health Committee

    Joint Favorable Substitute
      Yea    22    Nay   11    (03/31/2021)