## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WE THE PATRIOTS USA, INC., Et al. | : | CIVIL ACTION NO. 3:21-CV-00597 (JBA) |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT OFFICE OF EARLY | : | |
| CHILDHOOD DEVELOPMENT, Et al. | : | |
| *Defendants* | : | July 29, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE AGENCY DEFENDANTS' MOTION TO DISMISS

The Defendants, the Connecticut Office of Early Childhood Development, the

Connecticut Department of Education, and the Connecticut Department of Public Health

(collectively, "State Agency Defendants"), file this memorandum of law in support of their

motion to dismiss all five counts of the Plaintiffs' Complaint.

As set forth below, counts one through four, and all claims brought by the two

associational plaintiffs, must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter

jurisdiction. Counts one through four are barred by the Eleventh Amendment, and the two

associations have failed to plead sufficient facts to establish associational standing.

Moreover, all five counts must be dismissed pursuant to Rule 12(b)(6) for failure to

allege sufficient facts upon which relief may be granted.

## I.     BACKGROUND

### A.     The Repeal of the Religious Exemption.

Pursuant to Conn. Gen. Stat. § 10-204a(a), all public and private schools must require

their students to be vaccinated against certain communicable diseases before permitting them to

enroll.[1]  Until April, 2021, § 10-204a(a) allowed students to obtain exemptions from the vaccination requirements for medical reasons if they presented documentation showing that a vaccine was "medically contraindicated because of [their] physical condition," or for religious reasons if they presented a statement that a vaccine "would be contrary to [their] religious beliefs" or those of their parent or guardian.  Conn. Gen. Stat. § 10-204a (Rev. to 2019) (a) (2) and (3).

On April 28, 2021 ("Date of Enactment"), the Connecticut General Assembly enacted No. 21-6 of the 2021 Public Acts ("P.A. 21-6") (attached hereto as Exhibit A).  Section 1 of P.A. 21-6 repealed the religious exemption, but provided exceptions for children who had sought religious exemptions prior to the Date of Enactment.  Children enrolled in kindergarten to twelfth grade ("K-12") as of the Date of Enactment were "grandfathered," i.e., could continue using their religious exemptions.  Conn. Gen. Stat. § 10-204a(b).[2]  Children enrolled in a

---

[1]The mandatory vaccinations are listed by statute.  The Connecticut Department of Public Health also is authorized to require additional vaccinations if certain public health institutions recommend them.  See Conn. Gen. Stat. §§ 10-204a(a) (listing, as required vaccinations, "diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B and any other vaccine required by the schedule for active immunization adopted pursuant to section 19a-7f"); 19a-7f(a) (Connecticut Department of Public Health "shall determine the standard of care for immunization," which "shall be based on the recommended schedules for active immunization for normal infants and children published by the National Centers for Disease Control and Prevention Advisory Committee on Immunization Practices, the American Academy of Pediatrics and the American Academy of Family Physicians.").

For the full schedule of immunization requirements for the 2020-21 school year, see https://portal.ct.gov/-/media/SDE/School-Nursing/Forms/Immunization_Requirements.pdf.

[2]The new subsection (b) of § 10-204a provides:  "The immunization requirements provided for in subsection (a) of this section shall not apply to any child who is enrolled in kindergarten through twelfth grade on or before the effective date of this section if such child presented a statement, prior to the effective date of this section, from the parents or guardian of such child that such immunization is contrary to the religious beliefs of such child or the parents or guardian of such child, and such statement was acknowledged, in accordance with the provisions of sections 1-32, 1-34 and 1-35, by (1) a judge of a court of record or a family support magistrate, (2) a clerk or deputy clerk of a court having a seal, (3) a town clerk, (4) a notary

preschool or prekindergarten program ("pre-K") were not grandfathered, but were given a one-year grace period to become vaccinated, until September 1, 2022, or 14 days after transferring to a public or private school program, whichever is later. Conn. Gen. Stat. § 10-204a(c).[3] All other children must either become vaccinated, or submit proof that they are in the process of doing so under § 10-204(a)(1), before being permitted to enroll for the 2020-2021 school year.

**B. The General Assembly enacted P.A. 21-6 § 1 in response to decreasing vaccination rates.**

The School Immunization Survey Data ("Immunization Data"), published by the Connecticut Department of Public Health ("CDPH") (Exhibit D to Plaintiffs' Complaint, Doc. 1-4),[4] shows that over the past several years the religious exemption has been having a growing

---

public, (5) a justice of the peace, (6) an attorney admitted to the bar of this state, or (7) notwithstanding any provision of chapter 6, a school nurse." (emphasis added)

[3]The new subsection (c) of § 10-204a provides: "Any child who is enrolled in a preschool program or other prekindergarten program prior to the effective date of this section who presented a statement, prior to the effective date of this section, from the parents or guardian of such child that the immunization is contrary to the religious beliefs of such child or the parents or guardian of such child, which statement was acknowledged, in accordance with the provisions of sections 1-32, 1-34 and 1-35, by (1) a judge of a court of record or a family support magistrate, (2) a clerk or deputy clerk of a court having a seal, (3) a town clerk, (4) a notary public, (5) a justice of the peace, (6) an attorney admitted to the bar of this state, or (7) notwithstanding any provision of chapter 6, a school nurse, but did not present a written declaration from a physician, a physician assistant or an advanced practice registered nurse stating that additional immunizations are in process as recommended by such physician, physician assistant or advanced practice registered nurse, rather than as recommended under guidelines and schedules specified by the Commissioner of Public Health, shall comply with the immunization requirements provided for in subparagraph (A) of subdivision (1) of subsection (a) of this section on or before September 1, 2022, or not later than fourteen days after transferring to a program operated by a public or nonpublic school under the jurisdiction of a local or regional board of education or similar body governing a nonpublic school or schools, whichever is later." (emphasis added)

[4]Because the Plaintiffs incorporated the Immunization Data as an exhibit to their Complaint and rely on it in support of their claims, see Compl., ¶ 19 and Exhibit D, this Court may consider the Immunization Data when ruling on the legal sufficiency of the Plaintiffs' claims under Rule 12 (b) (6). See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

The Immunization Data is available online, see Compl., ¶ 19 n.1 (providing hyperlink), at: School Survey (ct.gov).

impact on school vaccination rates.  The percentage of incoming kindergarten students claiming religious exemptions increased almost every year from 2012 to 2020:  from 1.4% during the 2012-13 school year to 2.3% by 2019-20, for a total increase of 0.9%.  Immunization Data (Doc. 1-4), pp. 4-5.  Meanwhile, the overall vaccination rate has decreased at a corresponding rate, see id., p. 4 (line graph), with 96.2% of kindergarteners being fully vaccinated against measles, mumps, and rubella ("MMR") in 2019-20, a 0.9% decrease since 2012-13.  Id., p. 3.  By contrast, the percentage of kindergarteners claiming health exemptions has remained constant, at 0.2% in 2019-20, compared with 0.3% during all previous years.  Id.

Looking at individual schools, the decreases in vaccination rates is more dramatic.  "Of the schools with more than 30 kindergarten students, 120 schools have MMR rates below 95%, and 26 schools have MMR rates below 90%."  Id., pp. 3-4.

These data trends were what prompted the General Assembly to enact P.A. 21-6 § 1.[5] Proponents of the repeal in both chambers emphasized that the decreasing vaccination rates, as reflected in the Immunization Data, posed a public health risk; that many individual schools had already fallen below the 95% vaccination threshold recommended by the United States Centers for Disease Control and Prevention ("CDC") for "herd immunity"[6]; and that the repeal of all non-health exemptions was necessary to prevent vaccination rates from continuing to decline. See H.R., April 19, 2021, pp. 9-13, remarks of Representative Jonathan Steinberg (attached

---

[5]In addition to the data, proponents of P.A. 21-6 also noted that there had recently been reported cases of the measles in Connecticut.  See DPH Confirms A Second Case of Measles In Fairfield County Household (ct.gov).

[6]The Immunization Data explains that the concept of "herd immunity" refers to when a "large percentage of the population is vaccinated [such that] the entire community (vaccinated and unvaccinated) receives additional protection from vaccine preventable diseases." Immunization Data, p. 3.  The CDC recommends a vaccination rate of 95% to achieve herd immunity for measles.  See https://www.cdc.gov/grand-rounds/files/measles-glossary.docx.

hereto as Exhibit B); <u>Sen., April 27, 2021</u>, pp. 5-6, remarks of Senator Daugherty Abrams (attached hereto as Exhibit C).

## C. The Plaintiffs' Lawsuit

The Plaintiffs, two associations and three parents suing on behalf of their children, brought this lawsuit challenging P.A. 21-6 § 1 on April 30, 2021. The associations, We The Patriots USA, Inc. ("Patriots") and CT Freedom Alliance, LLC ("CT Freedom"), allege that they are organizations that advocate for the protection of constitutional rights and freedoms, and that many of their members are Connecticut parents "affected by" P.A. 21-6 § 1. <u>Compl.</u>, ¶¶ 2-3. The three parents allege that their children attend, or will be eligible this fall to attend, kindergarten and various prekindergarten programs. They further allege that vaccinating their children would be contrary to their personal religious beliefs. <u>Id.</u>, ¶¶ 25-30 (Constantina Lora); ¶¶ 31-35 (Miriam Hidalgo); ¶¶ 36-41 (Asma Elidrissi).[7]

The Plaintiffs allege that P.A. 21-6 § 1 violates: (1) the free exercise clause of the First Amendment; (2) their "rights to privacy and medical freedom" as established in <u>Roe v. Wade</u>, 410 U.S. 113 (1973), and <u>Planned Parenthood v. Casey</u>, 505 U.S. 833 (1992); (3) the equal protection clause of the Fourteenth Amendment; (4) the "Fourteenth Amendment right to child rearing"; and (5) the Individuals with Disabilities Education Act ("IDEA"). They seek orders

---

[7]Plaintiff Lora alleges that she has three children who previously had obtained religious exemptions, two in middle/high school who are grandfathered, and one currently in preschool who will enroll in kindergarten in fall, 2022, who is not grandfathered. <u>Compl.</u>, ¶¶ 25, 30.

Plaintiff Hidalgo alleges that she has two children "who are eligible for daycare and will be eligible for preschool in the fall of 2021," and that they "will be subject to the vaccination requirement and will not be allowed to claim a religious exemption." <u>Id.</u>, ¶ 31.

Plaintiff Elidrissi alleges that she has two children, "one who has not fully completed registration for kindergarten and one [who] will be eligible for preschool in the fall of 2021." <u>Id.</u>, ¶ 36. She alleges that both "will be subject to the vaccination requirement and will not be allowed to claim a religious exemption." <u>Id.</u>

declaring that P.A. 21-6 violates the above constitutional and statutory provisions and permanently enjoining its enforcement.  Compl., pp. 12-13.

## II.    ARGUMENT

### A.    Counts One Through Four, and all claims by Patriots and CT Freedom, should be dismissed for lack of subject matter jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

### 1.    Counts one through four are barred by the Eleventh Amendment.

Counts one through four all must be dismissed for lack of subject matter jurisdiction because they are barred by the Eleventh Amendment.  See Atlantic Healthcare Benefits Trust v. Googins, 2 F.3d 1, 4 (2d Cir. 1993) (Eleventh Amendment immunity "affects . . . subject matter jurisdiction"); see also Williams v. Marinelli, 987 F.3d 188, 196 (2d Cir. 2021).

Under the Eleventh Amendment, states are immune from suits brought against them in federal court by citizens of the same state or other states.  Papasan v. Allain, 478 U.S. 265, 276 (1986).  The immunity also extends to any "state entity that is an 'arm of the State' . . . ." Deposit Ins. Agency v. Superintendent of Banks (In re Deposit Ins. Agency), 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks and citations omitted).  In the present case, the State Agency Defendants unquestionably are "arms of the state" entitled to assert Eleventh Amendment immunity.  See Santiago v. New York State Dep't of Correctional Services, 945

F.2d 25, 28 n.1 (2d Cir. 1991); In re Deposit Ins. Agency, at 617.

Eleventh Amendment immunity, however, is "not absolute." Id. It does not apply if (1) Congress properly and explicitly abrogates it by statute; (2) the state voluntarily waives it; or (3) the claim falls within the exception established in Ex Parte Young, 209 U.S. 123 (1908), for claims against state officials acting in their official capacities seeking prospective injunctive relief. See In re Deposit Ins. Agency, 482 F.3d at 617.

None of these exemptions apply. Congress has not abrogated states' Eleventh Amendment immunity for any of the claims alleged in counts one through four, the state has not voluntarily waived its immunity as to any of those claims,[8] and the exception recognized in Ex Parte Young does not apply because the Plaintiffs brought this lawsuit against state agencies rather than against state officials acting in their official capacities. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (Ex Parte Young "has no application in suits against the States and their agencies") (internal quotation marks omitted); see also Papasan, 478 U.S. at 276; Garcia v. Akwesasne Housing Authority, 268 F.3d 76, 87 (2d Cir. 2001).

Accordingly, as against the State Agency Defendants, counts one through four are barred by the Eleventh Amendment and must be dismissed.

---

[8]The State has, however, waived its Eleventh Amendment immunity with respect to count five of the Complaint, which alleges that P.A. 21-6 violates the IDEA. "When providing funds from the federal purse, Congress may require as a condition of accepting those funds that a state agree to waive its sovereign immunity from suit in federal court." T.W. v. N.Y. State Bd. of Law Exam'rs, 996 F.3d 87, 92 (2d Cir. 2021) (internal quotation marks omitted). That is what Congress did when it enacted the IDEA. See 20 U.S.C. § 1403 (a) ("A State shall not be immune under the 11th Amendment to the Constitution of the United States from suit in Federal court for a violation of this title [20 USCS §§ 1400 et seq.]."); Bd. of Educ. v. Schutz, 290 F.3d 476, 480 (2d Cir. 2002) (noting "the obvious fact that § 1403(a)'s waiver of sovereign immunity extends only to claims brought pursuant to the IDEA, not claims brought pursuant to § 1983 or some other statute") (emphasis added).

## 2.    Patriots and CT Freedom lack associational standing

All claims brought by Patriots and CT Freedom should be dismissed for lack of subject

matter jurisdiction because neither association has pleaded sufficient facts to establish their

standing to sue on behalf of their members.  See Rodriguez v. Winski, 444 F. Supp. 3d 488, 496-

97 (S.D.N.Y. 2020) (failure to plead associational standing requires dismissal).[9]

An association has standing to sue on behalf of its members if, inter alia, "its members

would otherwise have standing to sue in their own right . . . ."  Disability Advocates, Inc. v. New

York Coalition for Quality Assisted Living, Inc., 675 F.3d 149, 157 (2d Cir. 2012) (quoting Hunt

v. Wash. State apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).  This element (first prong of

Hunt) requires the association "to include at least one member with standing to present, in his or

---

[9] To establish constitutional standing a plaintiff must satisfy three elements: (1) it must have personally suffered an injury in fact that is  both concrete and particularized and actual or imminent; (2) there must be a causal connection between Plaintiff's injury and the challenged statute; and (3) it must be likely, and not merely possible or speculative, that the injury will be redressed by a favorable decision. Field Day, LLC v. Cty. of Suffolk, 463 F.3d 167, 175 (2d Cir. 2006).
    The organizational plaintiffs are bringing their constitutional claims pursuant to 42 U.S.C. § 1983.   See Compl. ¶13; Baker v. McCollan, 443 U.S. 137, 144 n.3(1979)("It is for violations of such constitutional and statutory rights that 42 U. S. C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.")   However, it has long been the rule in this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983. Aguayo v. Richardson, 473 F.2d 1090 (2d Cir. 1973)(Friendly, J.).
    In order to establish standing *as an organization,* the organization must establish the following three elements: "(i) an imminent 'injury in fact' to itself as an organization (rather than to its members) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to enforcement of the [law at issue]; and (iii) that a favorable decision would redress its injuries." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109-10 (2d Cir. 2017).
    To the extent the organizational plaintiffs rely on their "lobbying in opposition to the law at issue," as the source of their constitutional injury, such allegations and efforts are insufficient to establish standing.  See Compl. ¶3;  Conn. Parents Union v. Wentzell, 462 F. Supp. 3d 167 (D. Conn. 2020); see also Young Advocates for Fair Educ. v. Cuomo, 359 F. Supp. 3d 215 (E.D.N.Y. 2019).

her own right, the claim (or the type of claim) pleaded by the association." United Food and Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (1996). For an individual member to have standing, they must demonstrate (1) a concrete, particularized injury in fact; (2) causation; and (3) redressability. Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng., 985 F. Supp. 2d 262, 268 (D. Conn. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

District courts in this circuit disagree about whether, to satisfy prong one of Hunt, the association must identify by name the members who have individual standing to sue. See Rodriguez, 444 F. Supp. 3d at 496 n.3 (discussing split). This Court need not pick a side in this split because, under either approach, the association "must at a minimum 'make specific allegations establishing that at least one identified member had suffered or would suffer harm." Id., 496 (quoting Summers v. earth Island Inst., 555 U.S. 488, 498 (2009)) (emphasis added). Neither Patriots nor CT Freedom has done so here.

Patriots simply alleges that "[a] significant number of its members are Connecticut parents affected by the matters complained of herein." Compl., ¶ 2. Similarly, CT Freedom alleges that "[m]ost of its members are parents affected by the legislation complained of herein." Id., ¶ 3. Neither association provides specifics about how their members were "affected by" P.A. 21-6, or alleges any facts that could establish that they were "affected" in a manner that actually rises to the required level of a particularized, concrete injury in fact so as to give them individual standing. See Treiber v. Aspen Dental Mgmt., 635 F. App'x 1, 3 (2d Cir. 2016) ("because the allegation is wholly conclusory and unsupported by any facts, it is insufficient to support standing"); see also Summers, 555 U.S. at 498 (association's mere assertions of "probability that some of [its] members are threatened with concrete injury" is insufficient);

United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 688-89 (1973) (allegation that plaintiff "could be affected by" challenged action insufficient to confer standing).

Because Patriots and CT Freedom have failed to plead that any of their individual members would have standing to sue in their own right, they lack associational standing and their claims must be dismissed.

### B. All Claims Must be Dismissed for Failure to State Claims Upon Which Relief May be Granted

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Williams v. Doe, 639 Fed. Appx. 55, 56 (2d Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In conducting this analysis, courts "must accept all allegations in the complaint as true, drawing all inferences in the non-moving party's favor." Lafaro v. N.Y. Cardiothoracic Group, PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009). Legal conclusions, labels, and a mere recitation of the elements, however, are not entitled to the presumption of truth and are insufficient. Ashcroft, at 678-79.

### 1. Count One (Free Exercise)

The Plaintiffs allege that § 10-204a, as amended by P.A. 21-6 § 1, violates the free exercise clause of the First Amendment on its face. They contend that P.A. 21-6 § 1 requires them either to "waive their religious identity" by having their children vaccinated, or to forgo

providing their children with the public education their children are constitutionally entitled to under article eighth, § 1, of the Connecticut constitution.[10]  Compl., ¶¶ 47-51.

The Plaintiffs' claim is legally deficient and must be dismissed for three independent reasons: (1) it is foreclosed by Supreme Court and Second Circuit precedent, which hold as a matter of law that conditioning school enrollment on vaccination does not violate the free exercise clause; (2) § 10-204a, as amended by P.A. 21-6 § 1, is a neutral law of general applicability and is therefore subject only to rational basis review, which it satisfies; and (3) even if § 10-204a were subject to strict scrutiny, it would satisfy that standard.

The First Amendment free exercise clause, applicable to the states through the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  Under Emp't Div. v. Smith, 494 U.S. 872 (1990) ("Smith"), the free exercise clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religious prescribes (or proscribes)."  Id., 879. Thus, laws that are both "neutral" and "generally applicable" are subject only to rational basis review, Cent. Rabbinical Cong. of the United States v. N.Y.C. Dep't of Health & Mental Hygiene, 763 F.3d 183, 193 (2d Cir. 2014), under which the law is "presumed . . . valid" so long

---

[10]Article eighth, § 1 provides that "[t]here shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."  This provision has been interpreted as establishing the right to a minimally adequate, free public education.  See Conn. Coal. for Justice in Educ. Funding, Inc. v. Rell, 327 Conn. 650, 658 (2018).  Conversely, the federal constitution does not afford any constitutional right to education.  See Smith v. Guilford Bd. of Educ., 226 F. App'x 58, 61 (2d Cir. 2007) (citing San Antonio Indep. Sch. Dist. V. Rodriguez, 411 U.S. 1, 35 (1973)); Martinez v. Malloy, 350 F. Supp. 3d 74, 91 (D. Conn. 2018).

as it is "rationally related ot a legitimate state interest." Id., 186 n.2. If the law fails to meet either requirement, it is subject to strict scrutiny. Id., 193.

      **a.**       **Count one is foreclosed by Supreme Court and Second Circuit precedent.**

The Court need not delve into whether § 10-204a is a neutral law of general applicability because controlling precedent establishes that the state does not violate the free exercise clause by requiring children to be vaccinated in order to attend school. These decisions are dispositive.

Beginning with Jacobson v. Massachusetts, 197 U.S. 11 (1905), the Supreme Court has consistently upheld states' ability to enact "health laws of every description" to protect the safety of the general public. Id., 25. In Jacobson, the Court rejected a Fourteenth Amendment due process challenge to a Massachusetts law that made it a crime to refuse to be vaccinated for smallpox, holding that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." Id., 26-27.

Although the free exercise clause had not yet been applied to the states when Jacobson was decided, see Cantwell, 310 U.S. at 303, the Court broadly recognized that the Massachusetts law did not "invade[] any right secured by the Federal Constitution." Id., 38 (emphasis added). It also cited favorably to several state court decisions that had upheld "statutes making the vaccination of children a condition of their right to enter or remain in public schools." Id., 31-34. Indeed, in Zucht v. King, 260 U.S. 174 (1922), the Supreme Court relied upon Jacobson to reject due process and equal protection challenges to a compulsory school vaccination law, concluding that "[Jacobson] had settled that it is within the police power of a State to provide for compulsory vaccination . . . ." Id., 176.

Subsequently, in Prince v. Massachusetts, 321 U.S. 158 (1944), the Court rejected a free exercise challenge to a child labor law that prohibited parents from allowing their minor children

to sell merchandise in public places.  Id., 159-61.  The Court cited Jacobson for the proposition that parents "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.  The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." Id., 166-67 and n.12 (emphasis added; footnote omitted).  Further, recognizing that the "state's authority over children's activities is broader than over like action of adults," id., 168, the Court emphasized that "[p]arents may be free to become martyrs themselves.  But it does not follow they are free . . . to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves."  Id., 170.

Relying on Jacobson, Zucht, and Prince, federal courts, including the Second Circuit, have uniformly rejected free exercise challenges to mandatory school vaccination laws.  See e.g. Phillips v. City of New York, 775 F.3d 538, 543 (2d Cir. 2015); Workman v. Mingo Cty. Bd. of Educ., 419 F. App'x 348, 353 (4th Cir. 2011); Whitlow v. Cal. Dep't of Educ., 203 F. Supp. 3d 1079, 1085-87 (S.D. Cal. 2016); McCarthy v. Boozman, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002); see also Nikolao v. Lyon, 875 F.3d 310, 316 (6th Cir. 2017) (citing Jacobson for proposition that, "[c]onstitutionally, [the plaintiff] has no right to an exemption" from school vaccination requirements based on her religious beliefs); V.D. v. New York, 403 F. Supp. 3d 76, 87 (S.D.N.Y. 2019) ("case law clearly establishes that [c]onditioning school enrollment on vaccination has long been accepted by courts as . . . permissible"); W.D. v. Rockland Cty., 2021 U.S. Dist. LEXIS 33515, at *76 (S.D.N.Y. Feb. 22, 2021)[11] (collecting cases and observing that "[n]umerous other courts outside of this Circuit have affirmed that Jacobson permits the State to

---

[11]The appeal in W.D. is currently pending before the Second Circuit under Docket No. 21-551.

mandate vaccination for school-aged children regardless of whether it violates their parents' religious beliefs").

In Phillips, the Second Circuit addressed the constitutionality of New York's school vaccination requirements that, at that time, permitted exemptions on both health and religious grounds (the religious exemption subsequently was repealed). Phillips, 775 F.3d at 540. The Plaintiffs' children received religious exemptions but were excluded from school pursuant to an emergency ordinance following an outbreak of chicken pox. Id., 540-41. The Plaintiffs challenged the vaccination requirements and ordinance under the free exercise clause. Id., 542. The district court granted the state's motion to dismiss that claim.

The Second Circuit affirmed, ruling that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." Id., 543. Although the New York law permitted religious exemptions, the Second Circuit made clear the law would have been constitutional even without a religious exemption. It emphasized that "New York could constitutionally require that all children be vaccinated in order to attend public school," and that by allowing religious exemptions, "New York law goes beyond what the Constitution requires . . . ." Id. (emphasis added). Moreover, in reaching this conclusion, the Second Circuit "agree[d]," id., with the Fourth Circuit's decision in Workman, 419 F. App'x at 353-54, which rejected a free exercise challenge to a compulsory school vaccination law that did not permit religious exemptions.[12] Accordingly, as numerous district courts have recognized, Phillips holds that "a

_____

[12]In Workman, the Fourth Circuit affirmed the district court's grant of summary judgment for the state, rejecting a plaintiff's challenge to West Virginia's school vaccination requirements. The court held that, "following the reasoning of Jacobson and Prince, we conclude that the  West Virginia statute requiring  vaccinations as a condition of admission to school does not unconstitutionally infringe Workman's right to free exercise. This conclusion is buttressed by the opinions of numerous federal and state courts that have reached similar

state is not required to provide an exemption to mandatory vaccination laws for parents who object to the law's requirements on religious grounds." V.D., 403 F. Supp. 3d at 86-87; see also e.g. W.D., 2021 U.S. Dist. LEXIS 33515, at *75-76; Whitlow, 203 F. Supp. 3d at 1084-85.

Under Phillips, the Plaintiffs' free exercise challenge fails as a matter of law. There is no First Amendment right to an exemption from school vaccination requirements on religious grounds. Indeed, Connecticut "could constitutionally require that all children be vaccinated in order to attend" school in the fall of 2021, Phillips, 775 F.3d at 543 (emphasis added), including K-12 students who had already obtained religious exemptions. Therefore, by grandfathering such students (or, in the case of pre-K students, giving them an extra year to become vaccinated), P.A. 21-6, if anything, "goes beyond what the Constitution requires . . . ." Id. (emphasis added).

Finally, to the extent the Plaintiffs are claiming that P.A. 21-6 is unconstitutional because it forces parents to choose between their religious beliefs and ensuring their children receive the public education they are constitutionally entitled to under article eighth, § 1, their claim fails. Phillips and the Supreme Court's decisions in Jacobson, Zucht, and Prince squarely establish that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause."[13] Phillips, 775 F.3d at 543.

conclusions in comparable cases." Workman, 419 F. App'x at 353-54. The court also held that, assuming strict scrutiny applied to the plaintiff's claim, the law met that standard. Id.

[13]The Plaintiffs have not claimed that P.A. 21-6 violates article eighth, § 1. To the extent the Plaintiffs are relying on article eighth, § 1, as support for their free exercise claim, their claim is foreclosed by Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984), which held that the Eleventh Amendment bars lawsuits against the state that allege violations of state law because it would be an "intrusion on state sovereignty [for] a federal court [to] instruct[] state officials on how to conform their conduct to state law."

That a right to a public education is enshrined in the Connecticut constitution does not compel a different result.[14] Indeed, the New York constitution includes provisions "requir[ing] the state to provide students with a sound basic education," Montesa v. Schwartz, 836 F.3d 176, 200 n.15 (2d Cir. 2016), yet Phillips upheld the state's ability to condition that education on vaccination.  See also Doe v. Zucker, No. 1:20-cv-840 (BKS/CFH), 2021 U.S. Dist. LEXIS 28937, at *86 (N.D.N.Y. Feb. 17, 2021) ("Plaintiffs' right to an education under New York State law is limited by the New York's mandatory school vaccination requirement, and '[t]he case law clearly establishes that [c]onditioning school enrollment on vaccination has long been accepted by courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases'") (quoting V.D. v. State of New York, 403 F.Supp.3d 76, 87 (S.D.N.Y. 2019)); W.D., 2021 U.S. Dist. LEXIS 33515, at *56, 74-75 (rejecting argument that emergency declaration conditioning school attendance on vaccination violated free exercise clause because it required plaintiffs "to either engage in acts prohibited by their faith . . . or lose [the] state-created . . . . right to a public education"); Whitlow, 203 F. Supp. 3d at 1086, 1091 (rejecting free exercise challenge to California's repeal of religious exemption, despite right to education being enshrined in state constitution); Brown v. Smith, 24 Cal. App. 5th 1135, 1145-46 (2018) (same).

---

[14]To the extent the Plaintiffs are attempting to invoke a "hybrid rights" type of claim—that a law challenged on the basis of the free exercise clause can be subject to greater scrutiny than it otherwise would receive if the law also implicates other constitutional rights (here, a state right to education)—their claim fails.  The Second Circuit rejected the "hybrid rights" theory, concluding that it could "think of no good reason for the standard of review to vary simply with the number of constitutional rights that the plaintiff asserts have been violated," and that a free exercise clause analysis should not "vary depending on whether other constitutional rights are implicated . . . ."  Leebaert v. Harrington, 332 F.3d 134, 144 (2d Cir. 2003) (internal quotation marks omitted).

Based on the above authorities alone, count one fails to plead a violation of the free exercise clause and should be dismissed.

> **b.** **Section 10-204a, as amended by P.A. 21-6 § 1, is a neutral law of general applicability; therefore, it is subject only to rational basis review, which it satisfies.**

A law that incidentally burdens religious practices is subject only to rational basis review if it is both "neutral" and "generally applicable." See Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 531 (1993).

Phillips resolves this issue by recognizing that school vaccination requirements like § 10-204a are subject only to rational basis review. See Phillips, 775 F.3d at 543 (discussing Smith doctrine and citing Leebaert v. Harrington, 332 F.3d 134, 143-44 (2d Cir. 2003), for proposition that parental free exercise claims are subject to rational basis review). In fact, Smith itself lists "compulsory vaccination laws" as an example of the type of law that should not be subject to strict scrutiny. Smith, 494 U.S. at 888-89. To the extent Phillips and Smith are not dispositive, however, § 10-204a is both neutral and generally applicable, and easily satisfies rational basis review.

<u>Neutrality</u>

"A law is not neutral . . . if it is 'specifically directed at [a] religious practice.'" Cent. Rabbinical Cong., 763 F.3d at 193 (quoting Smith, 494 U.S. at 878). A law can fail this requirement by discriminating "on its face," such as by explicitly referring to a religious practice, id., or if it is facially neutral but nonetheless "targets religious conduct for distinctive treatment . . . ." Id. (emphasis omitted).

As amended, § 10-204a is not directed at religion, either by its terms or in its operation. It requires "each child" to be vaccinated before enrolling in school unless the child submits

adequate documentation establishing that the vaccination is "medically contraindicated" because of the child's "physical condition . . . ." Conn. Gen. Stat. § 10-204a (a) (2). With the exception of K-12 students with existing religious exemptions (who are grandfathered), the statute excludes from enrollment all children without health exemptions who have not been vaccinated for any reason, regardless of whether that reason is because of a religious objection or some secular consideration (e.g., ideological beliefs, a general mistrust of government or of vaccines, financial reasons). Because the statute does not "single out [religion] for especially harsh treatment," Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 66 (2020), it meets the "neutrality" requirement.[15] See W.D., 2021 U.S. Dist. LEXIS 33515, *62-63 (holding that emergency order restricting gatherings of people who were not vaccinated for any non-medical reason was "neutral" for purposes of Smith); F.F. v. New York, 143 N.Y.S.3d 734, 741 (App. Div. 3rd Dept.) (concluding that New York's repeal of religious exemption to school vaccination law was "neutral"); see also Whitlow, 203 F. Supp. 3d at 1086-87 (rejecting proposition that California's repeal of religious exemption violates Smith because it permits medical exemptions to vaccination laws but not religious ones).

---

[15]The Plaintiffs do not allege in their Complaint that P.A. 21-6 was motivated by religious animus. See W.D., 2021 U.S. Dist. LEXIS 33515, *63 (discriminatory intent may defeat "neutrality" of law) (citing Lukumi, 508 U.S. at 540). Even if they did allege it, however, their claim would fail. Review of the legislative history of P.A. 21-6 § 1 shows that it was motivated entirely by public health concerns stemming from the slow but steady decrease in school vaccination rates, brought about by increasing numbers of incoming students claiming religious exemptions. See H.R. (Exhibit B), pp. 9-13; Sen. (Exhibit C), pp. 5-6; see also Immunization Data (Pl. Compl. Exhibit D, Doc. 1-4) (describing data trends). Courts have rejected claims of discriminatory intent where the legislative debate revealed that vaccination requirements were motivated by concerns for public health. See W.D., 2021 U.S. Dist. LEXIS 33515, *64-66; F.F., 143 N.Y.S. 3d at 740-41.

<u>General Applicability</u>

General applicability does not require universality, as "[a]ll laws are selective to some extent." <u>Lukumi</u>, 508 U.S. at 542-43; <u>see also</u> <u>Mich. Catholic Conference v. Burwell</u>, 755 F.3d 372, 394 (6th Cir. 2014) ("[g]eneral applicability does not mean absolute universality"), <u>vacated on other grounds by</u> 126 S. Ct. 2450 (2016) (internal quotation marks omitted). Rather, "[t]he general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens <u>only</u> on conduct motivated by religious belief.'" <u>Cent. Rabbinical Cong. of the United States</u>, 763 F.3d at 196 (<u>quoting</u> <u>Lukumi</u>, 508 U.S. at 542-43) (emphasis added).

Section 10-204a imposes the same vaccination requirements regardless of religion, and certainly does not impose any special obligations only on those children whose opposition to vaccines is religiously motivated. If a child's parents object to vaccines for secular reasons that are unrelated to their child's health, that child must comply with the requirements to the same extent as children whose parents object for religious reasons. Thus, § 10-204a is "generally applicable."[16] <u>See</u> <u>Commack Self-Service Kosher Meats, Inc. v. Hooker</u>, 680 F.3d 194, 210-11 (2d Cir. 2012) (holding that law regulating sale of kosher goods was generally applicable because it "applies to any seller who offers products for sale as 'kosher' regardless of the seller's religious belief or affiliation"); <u>Mich. Catholic Conference</u>, 755 F.3d at 394 (law requiring contraceptive coverage was generally applicable where it "does not pursue the governmental

---

[16]The fact that P.A. 21-6 § 1 had the effect of removing the religious exemption is of no moment in the general applicability analysis. As the New York Appellate Division explained in <u>F.F.</u>, the general applicability requirement is concerned with laws that treat religion <u>more harshly</u> than comparable secular groups, and legislation that repeals a religious objection does not treat religious objectors more harshly but instead subjects them to the same requirements that everyone else has been subject to. <u>F.F.</u>, 143 N.Y.S. 3d at 741-42 (<u>citing</u> <u>Roman Catholic Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63, 66 (2020)); <u>Love</u>, 29 Cal. App. 5th at 989 (repeal of religious exemption is not unconstitutional because it merely "involves the removal of an exemption that is not required under the law") (<u>quoting</u> <u>Whitlow</u>, 203 F. Supp. 3d at 1089).

interest . . . only against entities with a religious motivated objection to providing such coverage; that interest is pursued uniformly," including against "entities that object for non-religious reasons"); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1134-35 (9th Cir. 2009) ("Pharmacies and pharmacists who do not have a religious objection . . . must comply with the rules to the same extent—no more and no less—than pharmacies and pharmacists who may have a religious objection . . . .. Therefore, the rules are generally applicable"); see also W.D., 2021 U.S. Dist. LEXIS 33515, *68-69 (emergency declaration barring unvaccinated children from public places unless they were health-exempt was "generally applicable"); F.F., 143 N.Y.S.3d at 741-42 (repeal of religious exemption was generally applicable).

That § 10-204a (a) permits medical exemptions does not render it "substantially underinclusive." "[A] law is . . . not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." Cent. Rabbinical Cong. of the United States, 763 F.3d at 197 (emphasis added).

Permitting health exemptions is not "at least as harmful," id., to the state's interest in requiring vaccinations as religious exemptions would be. First, the purpose of § 10-204a(a) is to protect the health and safety of Connecticut's school children. Requiring children with a medical need for an exemption to endanger their health by being vaccinated would undermine that purpose, whereas requiring students with non-medical objections—including but not limited to religious objections—furthers that purpose. Second, health exemptions have had far less of an impact on vaccination rates than religious objections. According to the Immunization Data, which the Plaintiffs incorporate as part of their Complaint, see Compl., ¶ 19 and Exhibit D, the percentage of incoming students claiming health exemptions remained constant and very low

from 2012 to 2020 (never rising above 0.3%), whereas the percentage of students claiming

religious exemptions was much higher and had been steadily increasing (from 1.4% to 2.3%).

Immunization Data (Doc. 1-4), pp. 3-4. Third, under longstanding precedent, the state arguably

is constitutionally required to permit medical exemptions, see Jacobson, 197 U.S. at 38-39,

whereas religious exemptions have never been constitutionally required. See Phillips, 775 F.3d

at 543. Because health exemptions are far less harmful to the state's interest, the provision for

health exemptions has no impact on the general applicability of § 10-204b.[17] See W.D., 2021

U.S. Dist. LEXIS 33515, at *67 (health exemption did not render law substantially

underinclusive); Whitlow, 203 F. Supp. 3d at 1086-87 (noting that federal circuit courts of

appeal generally have "'refused to interpret Smith as standing for the proposition that a secular

exemption automatically creates a claim for a religious exemption'") (quoting Grace United

Methodist Church v. City of Cheyenne, 451 F.3d 643, 651 (10th Cir. 2006)).

Because § 10-204a is a neutral law of general applicability, it is subject only to rational

basis review. Commack Self-Serv. Kosher Meats, 680 F.3d at 212.

---

[17]The fact that P.A. § 21-6 permits students with existing religious exemptions either to keep their exemptions (if enrolled in K-12) or to have an additional year to become vaccinated (if in pre-K) also does not render the law substantially underinclusive. If anything, these provisions make the law more inclusive of religious objections because they provide the objectors with greater accommodation than they otherwise would receive without the provisions. Moreover, these provisions are not based upon any religious preference, but instead the secular considerations of the students' grade levels and when (i.e., before or after the Date of Enactment) they had sought the religious objection. See Mich. Catholic Conference, 755 F.3d at 394 ("[T]he availability of the exemption and the accommodation means that the law imposes a lesser burden on those who object for religious reasons because they do not have to pay for the coverage. Accordingly, the program is generally applicable.") (emphasis in original); Korte v. United States HHS, 912 F. Supp. 2d 735, 744 (S.D. Ill. 2012) ("[T]his Court does not perceive how a gradual transition undercuts the neutral purpose or general applicability of the mandate. And, Plaintiffs do not link the grandfathering mechanism to any sort of religious preference.").

<u>Rational Basis</u>

Rational basis review requires merely that the law be "rationally related to a legitimate [government] interest." <u>Neary v. Gruenberg</u>, 730 F. App'x 7, 10 (2d Cir. 2018). So long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification," the law must be upheld. <u>FCC v. Beach Commc'ns</u>, 508 U.S. 307, 313 (1993). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts that, taken as true, establish that the law "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that [it is] irrational." <u>Neary v. Gruenberg</u>, 730 F. App'x 7, 10 (2d Cir. 2018); <u>see also</u> <u>Zavatsky v. Anderson</u>, 130 F. Supp. 2d 349, 356-57 (D. Conn. 2001).

The Plaintiffs' Complaint does not come close to meeting that burden. To the contrary, the General Assembly's objective in enacting P.A. § 21-6—protecting school children and the broader public from communicable diseases—is not merely a legitimate governmental interest but a compelling one (see below). <u>See</u> <u>Workman</u>, 419 F. App'x at 352 ("the state's wish to prevent the spread of communicable diseases [through school vaccine requirements] clearly constitutes a compelling interest").

The Plaintiffs also have not pleaded any facts establishing that P.A. § 21-6 was not rationally related to that objective. Nor could they. <u>See</u> <u>F.F.</u>, 143 N.Y.S.3d at 743 ("the repeal [of the religious exemption] easily survives rational basis review"); <u>see also</u> <u>Phillips</u>, 775 F.3d at 543; <u>W.D.</u>, 2021 U.S. Dist. LEXIS 33515, *79-80. It was not irrational for the General Assembly to have concluded that removing the religious exemption would increase the overall percentage of vaccinated students, thereby decreasing the likelihood of a disease outbreak. Indeed, the Immunization Data bears out that the religious exemption was having an outsized

impact on vaccination rates.  Over the past several years there has been a slow but steady decrease in vaccination rates among incoming kindergarteners—a decrease that has generally corresponded with the increase in religious exemptions over that same time period.  See Immunization Data (Doc. 1-4), pp. 3-4.  Accordingly, P.A. § 21-6 easily meets rational basis review.

        **c.**      **Alternatively, even if P.A. 21-6 were subject to strict scrutiny, it would satisfy that standard.**

"[A] law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests."  Fifth Ave. Presbyterian Church v. City of N.Y., 293 F.3d 570, 574 (2d Cir. 2002).

Compelling Interest

The Court need not look to the Plaintiffs' Complaint or the facts of this case to determine whether the state had a compelling interest in repealing the religious exemption.  Existing caselaw establishes that it had such an interest as a matter of law.

The Fourth Circuit's decision in Workman—a decision the Second Circuit has explicitly "agree[d]" with, Phillips, 775 F.3d at 540—is squarely on point.  Workman involved a free exercise challenge to West Virginia's mandatory school vaccination law, which, similar to § 10-204a, permitted health exemptions but not religious ones.  Workman, 419 Fed. Appx. at 352.  The Fourth Circuit held that, "assuming for the sake of argument that strict scrutiny applies, prior decisions from the Supreme Court [Jacobson and Prince] guide us to conclude that [the] vaccination laws withstand such scrutiny."  Id., 353.  Significantly, the court's analysis relied entirely on existing caselaw and was in no way dependent on the factual circumstances specific to West Virginia.  In fact, the court rejected the plaintiffs' arguments that the state lacked a compelling interest in requiring vacations because there was no "outbreak of an epidemic," or

because the law "requires vaccination against diseases that are not very prevalent" or that do not "present[] a clear and present danger." Id., 353 (internal quotation marks omitted). The court instead held: "On the contrary, the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest." Id., 353.

Accordingly, "states need not wait for vaccination rates to fall below the recommended threshold or for outbreaks to occur," but have a compelling interest in "proactive[ly]" ensuring vaccination rates do not fall to problematic levels. F.F. v. State of N.Y., 114 N.Y.S.3d 852, 867-68 (Sup. Ct. 2019), aff'd, 143 N.Y.S.3d 734, 741 (App. Div. 3rd Dept. 2021); see Whitlow, 203 F. Supp. 3d at 1090 (observing that state's compelling interest "does not depend on or need to correlate with the existence of a public health emergency," and that state's "objective of immunization is not served by a law that allows for [religious exemptions], whether the [religious exemption] rate is 2% or 25%") (emphasis added); Sadlock v. Bd. Of Ed., 137 N.J.L. 85, 90, 58 A.2d 218 (rejecting argument that vaccination law could not stand "since at the time of its adoption, there was no epidemic or threatened epidemic"); Mosier v. Varren County Bd. of Health, 308 Ky. 829, 831 (1948) ("the health authorities are not required to wait until an epidemic exists before acting, but it is their duty to adopt timely measures to prevent one"); Price v. Price (In re Price), No. E069342, 2019 Cal. App. Unpub. LEXIS 935, at *15 (Feb. 6, 2019) (relying on Workman to conclude that school vaccination rates above 95% "herd immunity" level did not undermine compelling interest). Put simply, the state's compelling interest in requiring vaccinations "exists regardless of the circumstances of the day, and is equally compelling whether it is being used to prevent outbreaks or eradicate diseases." Id., 1090.

Accordingly, the state had a compelling interest in repealing its religious exemption in order to maximize the percentage of school students vaccinated against communicable diseases,

and this compelling interest existed regardless of then-current circumstances or vaccination rates. The state did not need to wait for vaccinations rates to fall below a certain threshold before acting.  In any event, as the Plaintiffs' own Complaint shows, the circumstances in Connecticut only bolster the state's compelling interest.  As noted above, the Immunization Data indicates that under-vaccination was slowly but steadily becoming a problem in Connecticut, and that the increasing number of students claiming the religious exemption was a chief cause of it. Immunization Data, pp. 3-5.  That threat was becoming imminent in certain individual schools, with 120 of them having MMR rates below 95%, and 26 below 90%.  Id., pp. 3-4.  In light of these trends, the state clearly had a compelling interest in taking proactive measures to ensure that under-vaccination did not develop into a public health emergency.[18]

<u>Narrow Tailoring</u>

"To meet the 'narrowly tailored' requirement, courts ask whether the policy at issue was 'the least restrictive means of achieving' the government's compelling interest."  <u>W.D.</u>, 2020 U.S. Dist. LEXIS 33515 at *82 (quoting <u>Thomas v. Review Bd. Of Ind. Employment Sec. Div.</u>, 450 U.S. 707, 718 (1981)).

---

[18]The state's compelling interest also is not undermined by the fact that P.A. 21-6 grandfathers current K-12 students who obtained religious exemptions prior to the Date of Enactment, which protects those parents' reliance interests on the prior version of § 10-204a. <u>See</u> <u>Eternal Word TV Network, Inc. v. Sec'y of the United States HHS</u>, 818 F.3d 1122, 1156 (11th Cir. 2016) (holding that "we do not wish to penalize the government for phasing in the [law's] requirements to help businesses adjust to a new health care regulatory landscape," and that "even if the [requirements] are phased in over time, the gradual implementation is insufficient to undermine the government's compelling interest") (<u>citing</u> <u>Heckler v. Mathews</u>, 465 U.S. 728, 746 (1984) ("[w]e have recognized, in a number of contexts, the legitimacy of protecting reasonable reliance on prior law")); <u>Whitlow</u>, 203 F. Supp. 3d at 1087-88, 1090 (California had compelling interest in repealing religious exemption despite "checkpoint" provisions that were designed to "soften the impact of [the repeal] through graduated application").

Because the state had a compelling interest in maximizing school vaccination rates as set forth above, the state would have been justified in excluding all unvaccinated students who were not health exempt.  Therefore, by permitting unvaccinated K-12 students with existing religious exemptions to enroll, § 10-204a is drawn even more narrowly than necessary to satisfy strict scrutiny.  See Whitlow, 203 F. Supp. 3d at 1091 (repeal of religious exemption was narrowly tailored because state's interest in achieving "total immunization" would not be "served by a law that allows for [religious exemptions], whether the [exemption] rate is 2% or 25%"); see also Phillips, at 543 ("[b]ecause the State could bar [the plaintiffs'] children from school altogether, a fortiori, the State's more limited exclusion during an outbreak of a vaccine-preventable disease is clearly constitutional").

## 2.    Count Two (Right to Privacy/Medical Freedom)

In count two, the Plaintiffs allege that § 10-204a violates their "rights to privacy and medical freedom" as recognized in  Roe and Casey because it "condition[s]" their state constitutional right to education "on adhering to the state's mandates for medical decisions," and because it "leav[es] [them] no viable alternatives to education their children without submitting" to the vaccination requirements.   Compl., ¶¶ 53-55.  The Plaintiffs' claim is legally deficient for three independent reasons.

First, although the Plaintiffs frame count one as a challenge under the rights to privacy and medical freedom, "the Supreme Court has made clear" that such claims "are properly analyzed 'in terms of a Fourteenth Amendment liberty interest'" under the substantive due process clause, "rather than in terms of a privacy interest."  Blouin v. Spitzer, 356 F.3d 348, 361 (2d Cir. 2004) (quoting Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 279 n.7 (1990)). When properly viewed as a substantive due process claim, count one is foreclosed by Phillips,

775 F.3d at 538. There the Second Circuit held that the plaintiffs' substantive due process challenge to New York's vaccination requirement had in turn been "foreclosed by [Jacobson]," in which the Supreme Court had "rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." Id., 542 (citing Jacobson, 197 U.S. at 38); see also Caviezel v. Great Neck Pub. Schs., 500 F. App'x 16, 19 (2d Cir. 2012) (rejecting substantive due process challenge to vaccination mandated based on Jacobson). The same result must obtain here. Moreover, the Plaintiffs' allegation that § 10-204a also implicates their right to a free public education, Compl., ¶ 54, has no impact on their substantive due process challenge because "there is no substantive due process right to public education . . . ." Phillips, 775 F.3d at 542 n.5. Phillips is thus wholly dispositive of count two.

Second, even if the Plaintiffs could properly bring a freestanding right-to-privacy challenge independent of substantive due process, thereby permitting them to avoid Phillips, their claim would fail because the right to privacy does not encompass the decision to vaccinate. Instead, the "types of decisions encompassed by the right of privacy are those involving 'freedom of personal choice in matters of marriage and family life.'" Hanzel v. Arter, 625 F. Supp. 1259, 1261 (S.D. Oh. 1985) (quoting Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 427 (1983)). In fact, the Supreme Court cited Jacobson in its opinion in Roe as one example of how the right to privacy was not "unlimited":

> The privacy right involved, therefore, cannot be said to be absolute. In fact, it is not clear to us that . . . one has an unlimited right to do with one's body as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decisions. The Court has refused to recognize an unlimited right of this kind in the past. Jacobson v. Massachusetts, 197 U.S. 11 (1905) (vaccination) . . . .

Roe, 410 U.S. at 154.

As the district court explained in Hanzel, this passage from Roe indicates "that the immunization decision is not encompassed by the right of privacy." Hanzel, 625 F. Supp. At 1262; see also Doe v. Zucker, No. 1:20-cv-840 (BKS/CFH), 2021 U.S. Dist. LEXIS 28937, at *69 (N.D.N.Y. Feb. 17, 2021) (rejecting argument that standards applicable to right to privacy claims extent to vaccination mandates); N.Y. State Ophthalmological Soc'y v. Bowen, 854 F.2d 1379, 1391 (D.C. Cir. 1988) (""[N]ot every decision relating to the body or bodily integrity is sufficiently intimate and personal to [implicate the right to privacy]. For example, the Supreme Court has not recognized that the decision to reject vaccination implicates a 'fundamental interest,' although bodily invasion and medical treatment are unavoidably involved."). Alternatively, to the extent mandatory immunization does implicate the right to privacy, Roe indicates that it remains constitutional under Jacobson.

Third, as a matter of law, § 10-204a does not burden the right to privacy or medical freedom because it does not compel vaccination. It simply makes vaccination a condition for attending school. The ultimate decision about whether to vaccinate is left to the parents, who can choose to vaccinate their children and send them to public or private school, or forgo vaccination and pursue alternative education such as homeschooling. See Phillips, 775 F.3d at 542 n.5 (distinguishing between vaccination law upheld in Jacobson, which required "all persons over age twenty-one be vaccinated for small pox and the criminal prosecution of the plaintiff for refusing to submit to vaccination," and New York's mandate which "requires only that children who are not otherwise exempted be vaccinated in order to attend school") (emphasis in original); Doe, 2021 U.S. Dist. LEXIS 28937, at *69-70 (mandatory vaccinations do not implicate right to privacy because "if a medical exemption is denied . . . the parent may forgo vaccination and

homeschool their child").

For any one of these reasons, count two fails to state a claim and must be dismissed.

### 3.    Count Three (Equal Protection)

The Court likewise should reject the Plaintiffs' claim in count three that P.A. 21-6 violates the equal protection clause of the Fourteenth Amendment because it (1) "singles out religious beliefs for less favorable treatment" by permitting medical exemptions but not religious ones, and (2) "creates age-based classes on who may continue to exercise their religious beliefs" by grandfathering K-12 students who had previously sought religious exemptions. Compl., ¶¶ 58-61.

The equal protection clause of the Fourteenth Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws." "To show an equal protection violation, [a plaintiff] must show that [he or she was] selectively treated compared with other similarly situated [individuals], and that selective treatment was based on impermissible considerations such as race or religion . . . ." Knight v. Conn. Dep't of Public Health, 275 F.3d 156, 166 (2d Cir. 2001); see also Sound Aircraft Servs., Inc. v. Town of E. Hampton, 192 F.3d 329, 335 (2d Cir. 1999) ("[a]t its core, equal protection prohibits the government from treating similarly situated persons differently").

As a threshold matter, the Plaintiffs' claim does not survive Zucht, 260 U.S. at 174, in which the Supreme Court rejected an equal protection challenge to a compulsory school vaccination law. The Court held that "in the exercise of the police power reasonable classification may be freely applied," and the law "is not violative of the equal protection clause merely because it is not all-embracing." Id., 177. The Fourth Circuit rejected a similar equal

protection challenge in <u>Workman</u> on the basis of <u>Zucht</u>.  <u>See</u>  <u>Workman</u>, 419 Fed. Appx. at 354-55.  This Court should do the same here.

To the extent the Plaintiffs' claim survives <u>Zucht</u>, it fails on its own merits.  Neither of the Plaintiffs' assertions—that P.A. 21-6 improperly distinguishes based on religion and age—is sufficient to state an equal protection claim.

<div align="center"><u>Religion</u></div>

Contrary to the Plaintiffs' claim, P.A. 21-6 makes no distinctions on the basis of religion. It merely distinguishes between health-exemptions, which are permitted, and non-health exemptions, which are not.  Conn. Gen. Stat. § 10-204a (a) (3).  If a parent seeks an exemption for <u>any</u> reason unrelated to their child's health, regardless of whether that reason is religious or secular, they will not qualify for an exemption.  Thus, the only classification the statute makes is between children who have a medical need for an exemption and those who do not.

With that in mind, the Plaintiffs' claim fails as a matter of law.  Children with a medical need for an exemption are not "similarly situated" to children with no such need.  <u>See</u> <u>Jacobson</u>, 197 U.S. at 38-39.  Accordingly, P.A. 21-6 does not violate equal protection by treating them differently.  <u>See</u> <u>Incantalupo v. Lawrence Union Free Sch. Dist. No. 15</u>, 380 F. App'x 59, 62 (2d Cir. 2010) (plaintiffs "failed to state an equal protection claim" where they failed to allege different treatment of "similarly situated individuals").  Courts considering equal protection challenges to similar mandatory school vaccination laws have reached the same conclusion.  <u>See</u> <u>F.F.</u>, 143 N.Y.S.3d at 743; <u>Whitlow</u>, 203 F. Supp. 3d at 1087-88; <u>W.D.</u>, 2021 U.S. Dist. LEXIS 33515, at *88.

Even if they were similarly situated, however, the classification between health and non-health exemptions would be subject only to rational basis review because it neither involves a

suspect class nor, as held in <u>Phillips</u>, burdens a fundamental right.  <u>See</u> <u>Spavone v. N.Y. State</u>

<u>Dep't of Corr. Servs.</u>, 719 F.3d 127, 136 (2d Cir. 2013) ("[w]hen a party challenges a

government classification that does not involve a suspect class or burden fundamental rights,

courts apply rational basis scrutiny").  It is also subject to rational basis review because the

Plaintiffs have attempted—unsuccessfully, for the reasons previously set forth—to challenge

P.A. 21-6 based on the free exercise clause.  "[W]here a law subject to an equal protection

challenge 'does not violate [a plaintiff's] right of free exercise of religion,' courts do not 'apply to

the challenged classification a standard of scrutiny stricter than the traditional rational-basis

test.'" <u>W.D.</u>, 2021 U.S. Dist. LEXIS 33515, at *87 (<u>quoting</u> <u>Johnson v. Robison</u>, 415 U.S. 361,

375 n.14 (1974)).

　　When reviewing a classification under rational basis review, courts will not overturn it

unless it is "so unrelated to the achievement of any combination of legitimate purposes that we

can only conclude that the government's actions were irrational."  <u>Neary</u>, 730 F. App'x at 10.

"To withstand a motion to dismiss. . . a plaintiff must plead sufficient facts that, treated as true,

overcome the presumption of rationality . . . ."  <u>Progressive Credit Union v. City of N.Y.</u>, 889

F.3d 40, 49-50 (2d Cir. 2018).

　　The Plaintiffs have pleaded no such facts in their Complaint.  Nor could they.  The

distinction between medical and non-medical objections to vaccination requirements has been

well-established since <u>Jacobson</u>, which recognized that the state would be constitutionally

<u>required</u> to permit an exemption to someone who had a medical need for it.  <u>Jacobson</u>, 197 U.S.

38-39.  Moreover, the Plaintiffs' own Complaint—specifically the Immunization Data—

demonstrates that the number of incoming students claiming religious exemptions had steadily

increased over the past several years, causing a decrease in overall vaccination rates, whereas the

percentage of students claiming health exemptions remained constant and very low.

Immunization Data, pp. 3-4.  Consistent with other courts' decisions, this is more than enough to provide a rational basis for the classification.  See F.F., 143 N.Y.S.3d at 743; Whitlow, 203 F. Supp. 3d at 1087-88; W.D., 2021 U.S. Dist. LEXIS 33515, at *88.

Alternatively, even if the classification were subject to strict scrutiny, it would satisfy that standard for the reasons set forth above.

<div align="center">Age</div>

Assuming for purposes of argument that P.A. 21-6 creates an age distinction by grandfathering children who filed for religious exemptions prior to the Date of Enactment if they were enrolled in K-12, but not prior-filers who were enrolled in pre-K, see Conn. Gen. Stat. § 10-204a(b) and (c), the Plaintiffs have nonetheless failed to state an equal protection claim.  K-12 children who had previously sought religious exemptions are not similarly situated to pre-K (or younger) children who had sought exemptions.  See Whitlow, 203 F. Supp. 3d at 1087 (holding that vaccination law providing grace period to children at certain "checkpoints" did not violate equal protection because such children were not "similarly situated to children not at 'checkpoints'").

Second, this classification is subject to rational basis review because it does not burden a fundamental right, and "age is not a suspect class."  Neary, 730 F. App'x at 9.  Because the Plaintiffs have pleaded no facts to establish that the classification "is so unrelated to the achievement of any combination of legitimate purposes" so as to be irrational, id., 10, the claim must be dismissed.

In any event, the classification easily meets rational basis review.  It was not irrational for the state to grandfather K-12 children with existing religious exemptions and thereby protect

the expectation interests of their parents, who had relied on the prior version of §10-204a when making decisions about how to education their children.  "Grandfather clauses . . . protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause." McCann v. City of Chicago, 968 F.2d 635, 638 (7th Cir. 1992); see also Nordlinger v. Hahn, 505 U.S. 1, 13 (1992) ("classifications serving to protect legitimate expectation and reliance interests do not deny equal protection of the laws"); Kampfer v. Cuomo, 643 F. App'x 43, 44 (2d Cir. 2016) (holding that grandfather clause of gun regulation met rational basis review for purpose of equal protection claim, and noting that "[g]randfather clauses are a long-accepted legislative tool for mitigating the effect of new regulations on persons who have relied on existing law").  Moreover, it was rational for the state to have wanted to "soften the impact of [the repeal] though graduated application." Whitlow, 203 F. Supp. 3d at 1088.

It also was not irrational for the state to grandfather only the children then enrolled in K-12, while giving pre-K children an extra year—until at least September 1, 2022—to become vaccinated.  The state reasonably could have concluded that existing K-12 students were more entrenched in the school system, and were thus more likely to have "built up substantial reliance interests" in maintaining their exemptions, than pre-K children who had not yet entered the school system.  See New Orleans v. Dukes, 427 U.S. 297, 305 (1976) (ordinance prohibiting street vendor operations, but grandfathering existing venders who were in operation for more than eight years, did not violate equal protection because "the city could reasonably decide that newer businesses were less likely to have built up substantial reliance interests in continued operation").  Moreover, because the percentage of incoming kindergarten students claiming religious exemptions had been increasing almost every year since 2012, see Immunization Data, pp. 3-5, it was reasonable for the legislature to have believed that that trend was likely to

continue, and that children then-enrolled in pre-K would claim more religious exemptions, and thus have a greater impact on vaccination rates, than any of the preceding kindergarten classes had. This, too, justifies the different treatment. Finally, P.A. 21-6 still does soften the impact on pre-K students, albeit to a lesser extent, by providing them an extra year to become vaccinated.

Because any age-based distinctions satisfy rational basis review as a matter of law, count three must be dismissed.

### 4.    Count Four (Parental Rights)

The Plaintiffs allege that P.A. § 21-6 violates their right to the care, custody, and control of their children, see Troxel v. Granville, 530 U.S. 57, 65 (2000) (describing right), because it "interferes with their right to decide what is best for their children's health and to raise them according to their religious beliefs." Compl., ¶ 64.

Although framed as a parental rights challenge, count two gets no further than the Plaintiffs' free exercise claim because the parental right that they claim P.A. 21-6 violates is their right to control their children's religious upbringing. When considering a similar joint free exercise and parental rights challenge to a child labor law in Prince, the Supreme Court observed that the parental rights aspect of the challenge "extends no further than that to freedom of religion, since in the circumstances all that is comprehended in the former is included in the latter." Prince, 321 U.S. at 164 n.8 (emphasis added). Therefore, a parent "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds." Id., 166 (citing Jacobson, 197 U.S. 11) (emphasis added).

Here, because the Plaintiffs' parental rights challenge is grounded in the alleged right to control their children's religious upbringing, Compl., ¶ 64, it is subsumed within their free exercise challenge. Since conditioning school enrollment on vaccination does not violate the

free exercise clause, see Phillips, 775 F.3d at 543, the Plaintiffs' parental rights challenge necessarily also fails and must be dismissed. See Skoros v. City of New York, 437 F.3d 1, 41 (2d Cir. 2006) ("[plaintiff] has no parental right claim independent of the Establishment and Free Exercise claims that we have already rejected as without merit"); Leebaert v. Harrington, 332 F.3d 134, 143 (2d Cir. 2003) (rejecting argument that "combining a free exercise claim with a parental rights claim" requires higher standard of scrutiny than otherwise would apply).

Moreover, the Plaintiffs' claim is legally deficient because they have not alleged the violation of a fundamental right. See Leebaert, 332 F.3d at 139-40 (claim of violation of parental rights fails unless law "impinges" on "fundamental right"). The free exercise clause "does not provide a right for religious objectors to be exempt from . . . compulsory inoculation law[s]." Caviezel v. Great Neck Pub. Sch., 739 F. Supp. 2d 273, 285 (2010), aff'd, 500 Fed. Appx. 16 (2d Cir. 2020); e.g. Phillips, 775 F.3d at 543; Nikolao, 875 F.3d at 316; Workman, 419 F. App'x at 354; see also Wisconsin v. Yoder, 406 U.S. 205, 233-34 (1972) ("the power of the parent, even when linked to a free exercise claim, may be subject to limitation . . . if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens."). Moreover, the Second Circuit has "agree[d]" with decisions from other circuit courts of appeal recognizing more broadly that "the parental right to direct the upbringing and education of children . . . does not include a right to exempt one's child from public school requirements."[19] Leebaert, 332 F.3d at 140-41. Count four must therefore be dismissed for this additional reason.

---

[19]To the extent the parental rights claim is not fully subsumed within their free exercise claim—i.e., they are alleging a violation of some secular aspect of their right to control their children's upbringing, such as a general "right to decide what is best for their children's health," Compl., ¶ 64—their claim also fails. The Plaintiffs have no parental right to exempt their children from school enrollment requirements. See Leebaert, 332 F.3d at 140-41.

## 5. Count five (IDEA)

Plaintiff Elidrissi alleges that her "oldest child is disabled within the meaning of the IDEA," and that she will "choose not to comply" with the vaccination requirements because of her personal religious beliefs. Compl., ¶¶ 71-72. She further alleges that P.A. 21-6 "violates the IDEA" because it does not provide any mechanism for providing disabled children whose parents choose not to vaccinate with a free and appropriate public education ("FAPE"). Id. ¶¶ 70, 75.

First, the Plaintiff Elidrissi's claim is legally deficient because she has failed to allege facts that, if true, would establish that her child is a "child with a disability" within the meaning of 20 U.S.C. § 1401(3). See Weixel v. Bd. of Educ., 97 Civ. 9367 (DAB), 2000 U.S. Dist. LEXIS 11041, at *18 (S.D.N.Y. Aug. 3, 2000) ("the IDEA's procedural requirements are not triggered if the plaintiff is not disabled within the meaning of [§ 1401(3)]"); see also 34 C.F.R. § 300.8 (a) (1) (further defining "child with a disability"). Plaintiff simply alleges, without any factual support, that her child is "disabled within the meaning of the IDEA." Compl., ¶ 71. This assertion is merely a legal conclusion and is not entitled to the presumption of truth. See Ashcroft, 556 U.S. at 678. Because Plaintiff Elidrissi has not pleaded this threshold requirement for a claim under the IDEA, her claim must be dismissed.

Second, P.A. 21-6 does not violate the IDEA rights of Plaintiff Elidrissi's child because its requirements apply generally to all school students regardless of whether or not they are disabled. In N.D. v. Hawaii Department of Education, 600 F.3d 1104 (9th Cir. 2010), the Ninth

---

In any event, rational basis review would apply to such a claim. See Immediato v. Rye Neck School District, 73 F.3d 454, 462 (2d Cir. 1996) ("where, as here, parents seek for secular reasons to exempt their child from an educational requirement and the basis is a claimed right to direct the 'upbringing' of their child, rational basis review applies"). As explained previously, P.A. 21-6 satisfies strict scrutiny, and thus easily satisfies rational basis.

Circuit held that a decision to close public schools on certain days in order to address a budget crisis did not violate the IDEA, reasoning that "Congress did not intend for the IDEA to apply to system wide administrative decisions" such as school closures, which "affect all public schools and all students, disabled and non-disabled alike." Id., 1116. Relying on N.D., the District Court in V.D., 403 F. Supp. 3d at 76, rejected an IDEA challenge to New York's repeal of its religious exemption, concluding that the IDEA "is designed to preserve the existing placement for an individual child—not to enjoin systemic action." Id., 94 (emphasis in original); see also J.T. v. de Blasio, 2020 U.S. Dist. LEXIS 212663, at *189-90 (S.D.N.Y. Nov. 13, 2020) (rejecting IDEA challenges to school closures during the COVID-19 pandemic because the closures applied to "every student in the district, abled and disabled"). The same rationale applies in the present case.

Third, for all the reasons laid out in V.D., 403 F. Supp. 3d at 76, P.A. 21-6 does not violate the IDEA but is instead wholly consistent with it. Following New York's repeal of its religious exemption, parents of students with disabilities who objected to vaccines on religious grounds claimed that the repeal (1) was preempted by the IDEA,[20] and (2) that it altered their children's educational placements and therefore violated the "stay put" provision of 20 U.S.C. § 1415 (j), which requires children to remain in their then-current placements until disputes about proposed changes to those placements are resolved. Id., 80.

Rejecting the argument that New York's repeal of the religious exemption conflicted with the IDEA, the District Court reasoned that "it is entirely possible to comply with both the immunization provisions . . . and the IDEA." V.D., 403 F. Supp. 3d at 88. The court noted that

---

[20]Although the Plaintiffs do not mention preemption in count five, they seek "[a] declaratory judgment finding that the [IDEA] preempts" P.A. 21-6. Compl., Prayer for Relief (F).

the plaintiffs "do not allege that their children are unable to receive vaccinations as a result of their disabilities," but that they had instead "made the affirmative choice not to vaccinate their children for non-medical reasons, thus opting out of public, private, and parochial schools in New York state." Id. (emphasis added)  Although the plaintiffs were "well within their right to do so," the IDEA "does not entitle them to a religious exemption to a generally-applicable health and welfare law." Id. (citing Phillips, 775 F.3d at 543).

The court also emphasized that if it "were to accept" the plaintiffs' argument that the IDEA preempted the repeal of the religious exemption, "a host of neutral school policies would be subject to invalidation," including "curricula choices, required reading, and even uniform requirements," whenever individual parents objected to them. Id., 88.  This would be wholly inconsistent with the IDEA's statutory scheme, which "envisions a large role for states in 'setting educational policy . . . [and] implement[ing] the statute's goals.'" Id., 90 (quoting Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 777 (2d Cir. 2002)).  It would also undermine the basic principle that the IDEA was modeled to "serve all disabled children," not the individual "allegations of . . . single interested part[ies]." Id. (emphasis in original; internal quotation marks omitted).

The District Court also concluded that the repeal did not violate the "stay put" provision of § 1415(j), reasoning that "it was plaintiffs' affirmative decision not to comply with the neutral requirement imposed by the repeal that led to an alteration of services—not any unilateral action taken on the part of the state." Id. (emphasis in original). The repeal simply "announced a new and constitutionally-permissible condition for school attendance, and provided all parents . . . with an opportunity to comply with its terms." Id., 93.  Accordingly, the court concluded that the plaintiffs "have no right under the IDEA to demand that a religious exemption be provided to their children." Id.

For these same reasons, Plaintiff Elidrissi's claim that P.A. 21-6 violates the IDEA fails as a matter of law. She does not allege that her child is unable to be vaccinated (which would potentially entitle that child to a medical exemption), but that she will "choose not to comply" because of her religious views. Compl., ¶ 71-72. Although she is entitled to make that choice, it will be her choice not to comply with the vaccination requirements, not P.A. 21-6, that will alter the educational services being provided to her child.[21] As V.D. holds, the IDEA cannot be used as a vehicle to secure religious accommodations not otherwise required by the Constitution. See also M. L. v. Smith, 867 F.3d 487, 492-93 (4th Cir. 2017) (holding that student was not denied FAPE merely because IEP, which was adequate in all other respects, did not include preferred religious instruction). To the contrary, "[t]he IDEA certainly has a secular purpose and its primary effect is one that does not advance religion." Id., 496-97 (quoting Peck ex rel. Peck v. Lansing Sch. Dist., 148 F.3d 619, 629 (6th Cir. 1998)). Accordingly, Plaintiff Elidrissi's claim that P.A. 21-6 violates the IDEA fails and must be dismissed.

Finally, to the extent the Plaintiffs are seeking a wholesale invalidation of P.A. 21-6, they would not be entitled to this relief even if P.A. 21-6 did violate the IDEA. The only relief Plaintiffs could obtain is an order requiring Plaintiff Elidrissi's child to remain in her current education placement. See V.D., 403 F. Supp. 3d at 94; J.T., 2020 U.S. Dist. LEXIS 212663, at *108-09.

---

[21]The same would be true if, for example, parents objected on religious grounds to co-educational public schools or to basic curricula choices, and because of those objections decided not to enroll their children. It would be the parents' decision not to enroll their children, rather than the school policies they found objectionable, that cause their children not to receive a public education.

## III.   CONCLUSION

For the foregoing reasons, the State Agency Defendants respectfully request that the

Plaintiffs' Complaint be dismissed in its entirety.

<div style="margin-left: 40%;">

DEFENDANTS
CT Office of Early Childhood, CT Dept. of
Education, and CT Dept. of Public Health

WILLIAM TONG
ATTORNEY GENERAL

BY:   /s/ Timothy J. Holzman
      Timothy J. Holzman
      Assistant Attorney General
      Federal Bar No. ct30420
      165 Capitol Avenue
      Hartford, CT  06106
      Tel: (860) 808-5210
      Fax: (860) 808-5385
      Timothy.Holzman@ct.gov

      Darren P. Cunningham
      Michael Skold
      Alayna M. Stone
      Assistant Attorneys General

</div>

## CERTIFICATION

I hereby certify that on July 29, 2021, a copy of the foregoing was filed electronically and

served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by

e-mail to all parties by operation of the court's electronic filing system or by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the court's CM/ECF System.

<div style="margin-left: 40%;">

/s/ Darren P. Cunningham
Darren P. Cunningham
Assistant Attorney General

</div>